591 A.2d 1178

BUCKS COUNTY HOUSING DEVELOPMENT
CORPORATION, Appellant,

v.

BRISTOL BOROUGH ZONING HEARING BOARD, Appellee.

Commonwealth Court of Pennsylvania.

Argued March 7, 1991.

Decided May 22, 1991.

126

Robert L. White, Langhorne, for appellant.

Richard M. Snyder, Langhorne, for appellee.

Before CRAIG, President Judge, PALLADINO, J., and BARRY, Senior Judge.

CRAIG, President Judge.

The Bucks County Housing Development Corporation (corporation) appeals from an order of the Court of Common Pleas of Bucks County which affirmed a decision of the Zoning Hearing Board of Bristol Borough denying the corporation's request to convert a partly nonconforming structure into a permitted residential use.

The issue in this case is whether the board erred in denying the corporation's request for an exception or variance to convert a nonconforming use into a conforming use, where the structure the corporation seeks to alter (1) does not conform to the borough ordinance's dimensional requirements with respect to its present uses, (2) is partly in compliance with the R–2 Residential use requirements of the district and is partly a commercial use not in compli-

ance, and (3) also will not conform with the dimensional requirements for the proposed conforming use.

The corporation's property, located on the corner of Pond Street and Logan Street, has an area of 4,717 square feet. Two buildings on the property, covering 63% of the land area, are attached to each other. One of the structures is a two-story building that is used as a two-family detached dwelling. Although that use is permitted in the R–2 Residential District where the property is located, the structure is nonconforming as to dimensional requirements, namely, yard setbacks, coverage and minimum lot area. The other structure is a one-story building which is a nonconforming commercial use; that one-story structure is also nonconforming as to dimensional requirements. That structure was most recently used as a print shop. Because both structures antedated the zoning ordinance, they are legitimately nonconforming.

The corporation proposes to convert the one-story commercial building into two residential units. No exterior structural changes are proposed. The board concluded that such a conversion would turn the corporation's two structures into a low-rise apartment building with four dwelling units, defined as a multi-family dwelling (more than two dwelling units) of three stories or less, which is a permitted use in the R–2 district.

Section 407(3) of the zoning ordinance allows, by administrative exception, alteration of a nonconforming structure which does not increase the existing nonconformance. The provision legally is like a special exception because it allows the zoning administrator to approve an alteration if certain standards are met, just as a special exception states what a zoning hearing board shall allow if stated standards are met. The ordinance provides as follows:

3. *Alteration or Extension.*

A. Nonconforming Structure.

(1) *A nonconforming structure may be altered,* reconstructed or enlarged *provided that such alteration, re-*

construction or enlargement *does not increase the non-conformance* or the nonconforming part of the structure.

(2) In the case of a nonconforming structure which is used by a nonconforming use, such alteration, extension or enlargement shall also meet the requirements of § 407(3)(C).

. . . .

C. Nonconforming Use. A nonconforming use shall not be altered, reconstructed, extended or enlarged, except in accordance with the following provisions:

(1) Such alteration, reconstruction, extension or enlargement shall be only upon the same lot as in existence on the date the use became nonconforming.

(2) Such alteration, reconstruction, extension or enlargement shall not create a volume or floor area of the nonconforming use which is greater than fifty (50%) percent more than the volume or floor area of the nonconforming use as it existed on the date the use became nonconforming, provided all other requirements of this Chapter are met. (Emphasis added).

The corporation argues that their proposal will decrease the nonconformities. We agree.

Only subsection A requires analysis because the proposal clearly complies with subsection C; the alteration would not go beyond the present lot's boundaries [C(1)], and the structural volume or floor area will not be enlarged [C(2)].

Subsection A above applies to this nonconforming commercial building because it is, in the words of the ordinance, a "nonconforming structure." Section 202 of the ordinance defines "NONCONFORMING STRUCTURE" as a structure "manifestly not designed to comply with the use or extent of use provisions of this Chapter ... where such structure lawfully existed prior to the enactment of this Chapter...." Subsection A requires only that the alteration not *increase* the nonconformance.

The proposed alteration of the structure will *decrease* the dimensional nonconformities. According to section 307(6)

of the ordinance, applicable to this R–2 District, the minimum lot area required for the existing two-family detached dwelling is 2,500 feet per dwelling unit, for a total of 5,000 square feet. The commercial use, a print shop, requires 5,000 square feet according to General Commercial District section 312(6), to which we must turn to find the lot area requirement applicable to a commercial printing use. Hence, to be dimensionally conforming, the present use of the property would require 10,000 square feet. Because the property consists of 4,717 square feet, the present use of the property is nonconforming by a total of 5,283 square feet.

The minimum lot area required by section 307(6) of the ordinance for the proposed low-rise apartment building is 2,000 feet per dwelling unit, so that the proposed total of four dwelling units would require a total of 8,000 square feet. Therefore, by changing the use of the property, the dimensional nonconformance would be 3,283 square feet. Hence, the low-rise apartment building would lessen the minimum lot area nonconformity by 2,000 square feet.

Additionally, the claimant's alteration of the property would lessen a parking nonconformity which presently exists. Although there is no space on the property for any off-street parking, the proposed use would require fewer parking spaces than the present uses.

According to section 701 of the ordinance, the commercial use of the property requires one parking space for every 150 square feet. The present commercial space measures 1,900 square feet, according to the board's findings, and thus requires at least twelve parking spaces. The ordinance requires one space for each .5 dwelling unit in a two-family detached dwelling for a total of 4 spaces. Thus, to conform to the ordinance, the entire present use of the property requires 16 parking spaces.

In contrast, for a low-rise apartment building, the ordinance requires one space for every .5 dwelling unit. The four apartments would therefore require 8 parking spaces.

Hence, the proposed use would decrease the parking nonconformity by 8 spaces.

Of course, because no change in building size is proposed, there would be no change in land coverage percentage.

With respect to yard setbacks, the record discloses only that the commercial part of the building provides no front yard abutting Pond Street or side yard abutting Logan Street. However, the yard requirements (and therefore the extent of the nonconformity) are greater for a commercial printing use than for a low-rise apartment building. According to section 312(7), the front yard requirement for the print shop is 25 feet. The side yard requirement is 30 feet.[1] In comparison, the low-rise apartment building, according to section 307(7) of the ordinance, requires a 20 foot front yard and a 25 foot side yard. Hence, the yard requirements for the proposed use are less than the requirements for the present use.

Section 407(3)A(1), the administrative exception, provides that alteration of a nonconforming structure may not increase the nonconformance. That provision does not require the applicant for the administrative exception to eliminate nonconformance or to decrease nonconformance to the least extent possible. It requires only that the alteration of a structure not *increase* the nonconformance. Hence, because the proposed low-rise apartment building will *decrease* the nonconformities, and the ordinance requires nothing more, the corporation is entitled to the administrative exception.

The board and the trial court decided this case in part upon the basis that the corporation had not met its burden of proving entitlement to a variance. However, no variance is required because there is compliance with the administrative exception standard, so that the requested conversion is allowable under the express terms of that exception.

Accordingly, the decision of the trial court is reversed.

1. Section 312(7) requires a 30 foot rather than a 10 foot side yard when, as in this case, the lot abuts a residential district.

## ORDER

NOW May 22, 1991, the decision of the Court of Common Pleas of Bucks County at No. 89–5930–17–5, dated September 19, 1990, is reversed.