634 A.2d 749

**In re Appeal of James M. NEILL From the decision of the Bedminster Township Zoning Hearing Board.**

**Appeal of BEDMINSTER TOWNSHIP BOARD of SUPERVISORS, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1993.

Decided Nov. 24, 1993.

Mary C. Eberle, for appellant.

James M. Neill, for himself, appellee.

Before PALLADINO and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

PALLADINO, Judge.

Bedminster Township Board of Supervisors (Township) appeals from an order of the Court of Common Pleas of Bucks County (trial court) which reversed the decision of the Zoning Hearing Board of Bedminster Township (ZHB) denying the application of James M. Neill (Neill) for a special exception. We reverse.

Neill owns a 30 acre tract of land located at Old Easton Road and the Tihickon Creek. The property, which is zoned R-2 residential, was formerly used as a camp for children but has been vacant for a number of years. On October 20, 1989, Neill applied to the ZHB for a special exception under Section 405(B)(10) of the Bedminster Township Zoning Ordinance

(Ordinance).[1] In his application, Neill sought a special exception to convert seven of the existing buildings [2] on the property into sixteen residential units.

Following a hearing, the ZHB issued an adjudication denying the application. Specifically, the ZHB concluded that Neill's application could not be approved under Section 405(B)(10) because the existing buildings were in such a state of disrepair that they could not be converted but could only be rebuilt or rehabilitated; that Section 405(B)(10) was primarily intended to provide for the conversion of large farmhouses, not a children's camp; and that Neill sought approval for an apartment complex which he may later attempt to subdivide into individual lots as a non-conforming use.

Neill appealed to the trial court which reversed the ZHB's decision and remanded to the ZHB with instructions to grant the special exception subject to reasonable conditions that the ZHB deemed appropriate. Township then appealed to this court which remanded the case to the trial court with instructions that the case be further remanded to the ZHB for the purpose of making findings of fact on the issue of whether Neill's application complied with the specific requirements of Section 405(B)(10) of the Ordinance. *Neill v. Bedminster Township Zoning Hearing Board,* 140 Pa.Commonwealth Ct. 365, 592 A.2d 1385 (1991).

On remand, the ZHB made the following pertinent findings of fact with respect to Neill's application:

10. As to the requirements of Section 405(B)(10) of the Zoning Ordinance, the [ZHB] finds as follows:

. . .

1. Section 405(B)(10) provides for "Residential Conversion" uses which it defines as "[t]the conversion of an existing building into two or more dwelling units or the conversion of an accessory building into one or more dwelling units." Section 405(B)(10) also enumerates conditions on residential conversion related to the outer appearance of structures, sewage systems, cooking and sanitary facilities, parking lot blinds, trash receptacle blinds, minimum yard requirements, and minimum per unit floor area.

2. These buildings include two stone houses, two ranch houses, a barn, a gym and a cottage.

b. Major structural changes to the exterior buildings will take place with the proposed conversion of the barn building in that the roof is to be removed and a one-story frame addition in which apartments will be located is to be added.

. . .

g. It was not established by evidence that the trash receptacles would not be visible from the street or abutting properties except on scheduled pick-up days.

h. In the R–2 Zoning District of the Township in which this property is located, the minimum yard requirements of front yard (85 feet), rear yard (100 feet) and side yard (30 feet minimum and 75 feet in the aggregate) could not be met in that:

(1) The manor house is located some 70 feet from the edge of the cartway of Old Easton Road;

(2) The barn lies within the ultimate right-of-way;

(3) The gymnasium, being closer than the manor house, is therefore located less than the cartway of Old Easton Road.

i. The plan marked 'A–1' as submitted at the original hearing makes no provision at all for a recreation/patio area nor does it show the proposed location for any such use.

ZHB's Decision and Order of April 20, 1992 at 5.

Based upon its findings of fact, the ZHB concluded that Neill's application did not comply with the requirements set forth in subsections (b), (g), (h) and (i) of Section 405(B)(10), relating to major structural change, the visibility of trash receptacles, minimum lot widths and minimum yard requirements and recreation/patio areas, respectively. Accordingly, the ZHB denied the application.

Neill again appealed to the trial court which, without taking additional testimony, concluded that the ZHB's findings were not supported by substantial evidence and that the ZHB erred in concluding that Neill failed to meet all of the requirements of Section 405(B)(10). Reversing the ZHB's decision, the trial court stated, "the [ZHB] must not attempt to thwart Mr. Neill by giving the ordinance a strained and narrow reading." Trial Court Opinion of January 12, 1993 at 6. This appeal followed.

On appeal to this court, the sole issue presented is whether Neill's application met all of the criteria set forth in Section 405(B)(10).[3]

As a preliminary matter, we note that a special exception is a conditionally permitted use, legislatively allowed where specific standards and conditions detailed in the ordinance are met. *Lafayette College v. Zoning Hearing Board of the City of Easton,* 138 Pa.Commonwealth Ct. 579, 588 A.2d 1323 (1991). An applicant for a special exception has the burden of proving that the request complies with all of the objective requirements of the zoning ordinance. *Id.*

The first requirement at issue provides in pertinent part:

b. Except as may be necessary for purposes of safety ..., there shall be no major structural change in the exterior of the building in connection with the conversion. After conversion, the building shall retain substantially the same structural appearance it had before such conversion.

Section 405(B)(10)(b) of the Ordinance.

In concluding that Neill's application failed to meet this criterion, the ZHB relied upon its finding that the conversion of the barn, as proposed by Neill, would require that the roof be removed and a one story frame addition be constructed. Our review of the record reveals that Neill himself testified at a hearing before the ZHB that "[a]s part of the conversion, that upper part of the barn would be removed and a one story frame addition would be constructed on top of the foundation." Notes of Testimony of November 20, 1989 at 8. Based upon

---

**3.** Where, as here, the trial court takes no additional evidence, our scope of review is limited to determining whether the zoning hearing board has manifestly abused its discretion or committed an error of law. *Cope v. Zoning Hearing Board of South Whitehall Township,* 134 Pa.Commonwealth Ct. 236, 578 A.2d 1002 (1990). A zoning hearing board abuses its discretion only if its findings are not supported by substantial evidence. *Id.* Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Hudachek v. Zoning Hearing Board of Newtown Borough,* 147 Pa.Commonwealth Ct. 566, 608 A.2d 652 (1992).

this testimony, we conclude that substantial evidence exists to support the ZHB's finding.

Because conversion of the barn as proposed by Neill would require the removal of its roof and the addition of one story in which apartments would be located, it is apparent that the conversion would constitute a major structural change in the exterior of the building. Moreover, the barn would not substantially retain the same structural appearance that it had before such conversion. Therefore, we conclude that Neill's application did not meet the criterion of subsection (b).

■ Next, we turn to the second requirement at issue which provides:

g. Trash receptacles shall not be visible from the street or abutting properties except on scheduled pick-up days.

Section 405(B)(10)(g) of the Ordinance.

In this regard, the ZHB found that Neill failed to meet his burden of proving that trash receptacles would not be visible from the street or abutting properties on days other than scheduled pick-up days. Although categorized as a finding of fact, this finding is really a conclusion of law.

An independent review of the record by this court reveals that although Neill testified with respect to the visibility requirements for parked cars, thus establishing compliance with subsection (f),[4] Neill failed to introduce *any* evidence that trash receptacles would not be visible from the street or neighboring properties. In this regard, we cannot simply accept the logic of the trial court that "if you cannot see parked cars from adjacent properties, you will not be able to see trash cans." Trial Court Opinion at 4. Because the burden was upon Neill, as an applicant for special exception, to show compliance with the objective requirement of subsection (g) and he did not, we conclude that the ZHB did not err in concluding that Neill failed to sustain his burden of proof with respect to the visibility of the trash receptacles.

4. Subsection (f) provides that off-street parking lots with three or more spaces shall be buffered from abutting residences.

■ Turning to the third requirement at issue, subsection (h) provides:

> h. The minimum lot width and minimum yard require-ments for Use B1 Detached Dwelling shall be met for the applicable zoning district.

Section 405(B)(10)(h).[5]

In concluding that Neill's application failed to meet the minimum yard set-back requirements for the R–2 district, the ZHB relied upon Neill's own admission that the barn, gym and manor house do not meet the condition. *See* N.T. at 3, 15. The dispute between the parties, however, relates to whether the three structures are nonconformities which may be al-tered. In its decision, the ZHB stated that although "[n]on-conforming structures or lots in existence as of the day of the Ordinance are lawful and can continue under such use[,] Mr. Neill is not continuing the use of these two buildings but is rather attempting to convert them." ZHB's Decision at 6. For the reasons which follow, we must reject the rationale of the ZHB.

Section 900 of the Ordinance defines a nonconforming struc-ture or lot as one which "does not conform to a dimensional regulation prescribed by this Ordinance for the district in which it is located ..., but which ... was in existence at the effective date of this Ordinance and was lawful at the time it was established." This definition must be compared with that of a nonconforming use of a building or lot. Section 901 defines a nonconforming use as one which "does not conform to a use regulation prescribed by this Ordinance for the district in which it is located, but which was in existence at the effective date of this Ordinance and was lawful at the time it was established."

---

**5.** The minimum lot width and minimum yard requirements are found in the Table of Dimensional Requirements of Section 513 of the Ordi-nance. This table indicates that in the R–2 district, the minimum front yard requirement is 85 feet, the minimum rear yard requirement is 100 feet and the minimum and aggregate side yard requirements are 30 feet and 75 feet, respectively.

In the instant case, several of the buildings to be converted fail to meet the applicable setback requirements. Because setback requirements are dimensional in nature, these buildings are nonconforming structures. Pursuant to Section 903(2) of the Ordinance,

[a] structure which does not conform to the regulations of this Ordinance other than Use Regulations, may be altered, reconstructed, or enlarged, provided that no such nonconformity is increased beyond its extent on the date that it became non-conforming. . . .

Conversion of the nonconforming structures in Neill's application would not increase the structures' current nonconformance with the Ordinance's setback requirements for the R–2 district. Therefore, we conclude that these structures may be altered or reconstructed as proposed by Neill in accordance with Section 903(2). *See Bucks County Housing Development Corp. v. Bristol Borough Zoning Hearing Board,* 140 Pa.Commonwealth 125, 591 A.2d 1178 (1991) (owner of building in residential zone, which did not conform to the zoning ordinance's dimensional requirements and was partially used for commercial purposes, was entitled to convert the building into a permitted use under the ordinance's provision permitting alterations which did not increase the nonconformance). Accordingly, we further conclude that the ZHB erred in concluding that Neill's application failed to meet the criterion of subsection (h).

■ The fourth and final requirement at issue provides:
i. Each converted structure shall have a recreation/patio area of at least two hundred (200) square feet per dwelling unit. The recreation/patio area shall not be located in the front yard or the minimum side or rear yards.

Section 405(B)(10)(i) of the Ordinance.

In concluding that Neill's application did not comply with this criterion, the ZHB found that the plan submitted by Neill at the hearing made no provision for a patio/recreation area and did not show the proposed location for such use. Our review of the proposed plan indicates that the plan indeed

does not provide for a patio/recreation area nor does it show a proposed location for one. Our review of the notes of testimony also reveals that Neill testified only as follows with respect to the recreation/patio area:

> To give an idea specifically looking at the plan, taking a look at that small building, 20 by 17, that area there would be almost adequate for the recreation area, two dwelling units—if it was 20 by 20, it would be two dwelling units and it would be adequate recreation area outside and around each of the buildings.

N.T. at 15.

Although Neill did testify that there was ample space which could be utilized to provide a recreation/patio area for each dwelling unit, Neill failed to specify the dimensions of or the proposed location of each recreation/patio area, making it impossible to determine whether compliance was met. Because the burden fell upon Neill to prove compliance with subsection (i) and he failed to do so, we conclude that the Board did not err in concluding that Neill failed to sustain his burden of proof with respect to the recreation/patio areas.

Because Neill failed to meet his burden of proving that his request complies with *all* of the objective requirements of Section 405(B)(10), we further conclude that the ZHB did not err in denying Neill's application for a special exception.

Accordingly, the order of the trial court is reversed.

## *ORDER*

AND NOW, November 24, 1993, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is reversed.