**ELIZABETHTOWN/MT. JOY ASSOCIATES, L.P., Appellant**

v.

**MOUNT JOY TOWNSHIP ZONING HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Argued Sept. 4, 2007.

Decided Oct. 1, 2007.

Reargument Denied Nov. 19, 2007.

Susan J. Smith, Camp Hill, for appellant.

Josele Cleary, Lancaster, for appellee.

BEFORE: LEADBETTER, President Judge, and FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Elizabethtown/Mt. Joy Associates, L.P., (Developer) appeals from the February 21, 2007, order of the Court of Common Pleas of Lancaster County (trial court) affirming the decision of the Mount Joy Township Zoning Hearing Board (ZHB) to deny Developer's application for a special exception. We affirm.

1. Developer currently has an appeal pending from the denial of a land development plan proposing commercial development for Tract D, which is located approximately sixty feet east of the Property. Developer presented no evidence in regard to its future development plans for Tracts C and D and insisted that any proposed development of that property should not be considered in conjunction with its proposal for Tracts A and B. However, the ZHB disagreed, finding Developer's intent to develop Tract C or D apparent and highly relevant with respect to Developer's plans for the Property. (Findings of Fact, Nos. 11A, 12.)

2. Section 135-122.C of the Ordinance permits a shopping center use as a special exception use in the C-1 District in accordance with the following regulations:

(1) Individual uses may be located in detached and attached structures and shall include only uses permitted as of right or by special exception within the Limited Commercial District C-1.
(2) Shopping centers shall have a minimum site area of five acres.

Developer owns approximately twenty-two acres (Property) in Mount Joy Township (Township) situated at the northeast corner of the intersection of Cloverleaf Road and Route 230, both state highways under the jurisdiction of the Pennsylvania Department of Transportation (DOT). The Property consists of two adjoining tracts, Tract A and Tract B, located in the Limited Commercial District (C-1) under the Township Zoning Ordinance (Ordinance). Surrounding properties include two adjacent tracts, Tracts C and D, that also are owned by Developer and intended for future commercial development.[1] (Findings of Fact, Nos. 1–4, 10–12, 20; ex. ZHB-1, R.R. at 1126a.)

Developer filed an application with the ZHB (Application) for a special exception to construct a shopping center on the Property, a use permitted by special exception in the C-1 District pursuant to section 135-122.C of the Ordinance.[2] Dur-

(3) Not more than 25% of the total site area shall be occupied by buildings.
(4) No building or permanent structure, other than a permitted sign, shall be erected within 100 feet of the street line or within 80 feet of any property line. No parking, loading or service area shall be located less than 80 feet from any property line, and parking, loading or service areas shall not be permitted within the required buffer yards.
(5) The proposed development shall be constructed in accordance with an overall plan and shall be designed as a single architectural style with appropriate landscaping.
(6) The distance, at the closest point, between any two buildings or groups of units of attached buildings shall not be less than 20 feet.
(7) Lighting facilities shall be provided and arranged in a manner which shall protect the highway and neighboring properties from any direct glare or hazardous interference of any kind.
(8) Buffer yards shall be provided along the street right-of-way line and along all property lines. Buffer yards shall not be less

ing the Application process, it was discovered that the proposed floor area of the shopping center exceeded that allowed by the Ordinance, and Developer submitted a revised site plan (Plan).[3] (Ex. A–17, R.R. at 1144a.) The revised Plan was not signed or certified by its preparers, and Developer's signature was dated before the date of the revised Plan. Both the initial and revised plans depicted the Property with six building pads, three of which were to be occupied by a convenience store with self-service fueling stations, a pharmacy, and a bank with a drive-thru facility. Developer identified the three other uses generally as retail uses, which are permitted by right in the C–1 District under section 135–121.D of the Ordinance. (Findings of Fact, Nos. 13, 23–25, 29–30.)

The ZHB held eight hearings on the Application between October 19, 2005, and March 21, 2006, during which Developer presented six witnesses in support of the Application. Thomas Matteson, Christopher Cafiero and Dennis Gehringer each testified generally regarding the site Plan and Ordinance compliance; Tony Schiavo testified regarding signage; Robert Bashore testified regarding traffic; and Joseph Turnowchyk testified regarding architecture.

Based on the evidence presented, the ZHB made ninety-eight findings of fact, from which it concluded that Developer's Plan: failed to meet the specific requirements for shopping centers set forth in section 135–122.C of the Ordinance; failed to demonstrate compliance with the general requirements for special exceptions set forth in Ordinance sections 135–187.D and 135–283.D; and failed to satisfy the requirements of 135–284.A of the Ordinance.[4]

than 80 feet in width, measured from such boundary line or from the street right-of-way line. Such buffer yard may overlap any required yard, and in the case of conflict, the larger yard requirement shall apply. Buffer yards shall be planted and permanently maintained with appropriate vegetative ground cover and trees and shrubs, and the applicant shall present a landscaping plan to the Zoning Hearing Board.
(9) The floor area of a shopping center shall not exceed 100,001 square feet.
(R.R. at 91a–92a.)

3. The original site plan proposed 100,001 square feet of building area excluding areas under canopies, such as fueling canopies. However, the Ordinance requires that this area is to be included in the calculation of the shopping center's square footage; therefore, the area planned for fueling canopies, when combined with the 100,001 square feet of building area, would have disqualified the Application under Ordinance section 135–122.-C(9). (Findings of Fact, Nos. 23–24.)

4. With respect to lighting regulations, section 135–187.D of the Ordinance provides, in relevant part:

(1) Any applicant for any approval shall submit an exterior lighting plan with the initial application. If the proposed use is authorized by special exception, the applicant shall present the exterior lighting plan as part of the application for a special exception.
(2) An exterior lighting plan shall include, but not be limited to, a detailed grid of illumination levels, a calculation as to the average illumination levels, the number of lighting fixtures, the height and location of the mounting fixtures, including the underside of any canopies, details as to how lighting will be recessed and required details of how lighting will be shielded and the angle of the shielding when required, and details of any building or canopy-mounted lighting to show that the outline and roofline provisions have been met.
(R.R. at 26a–27a.)
Ordinance section 135–283.D provides, in relevant part:

Special exceptions. When special exceptions are provided for in this chapter, the [ZHB] shall hear and decide requests for such special exceptions in accordance with stated standards and criteria. In granting a special exception, the [ZHB] may attach such reasonable conditions and safeguards,

The ZHB acknowledged that applications presented at this early stage often changed during the land development process. However, the ZHB recognized that the Ordinance requires that an applicant for a special exception provide a sufficiently detailed plan, containing necessary studies or other data, so that the ZHB can honestly conclude that compliance has been demonstrated. Ordinance section 135–283.D(4). The ZHB determined that Developer had not done this, citing inadequacies in overall transportation planning and numerous other deficiencies, including insufficient evidence with respect to the architectural style, signage and lighting requirements of the Ordinance. In addition, Developer's revised Plan, the only one that met the square footage requirement of Ordinance section 135–122.C(9),

was not properly certified and signed, in violation of sections 135–284.A(14) and (15) of the Ordinance. The ZHB noted that some of these deficiencies, taken in isolation, might lead it to approve the Application subject to conditions that the deficiencies be corrected. However, the ZHB declined to do so in light of the overall number of deficiencies and inconsistencies.

 On May 3, 2006, the ZHB issued an opinion and order denying Developer's Application. Developer filed an appeal with the trial court, and the Township filed a Notice of Intervention. Following the submission of briefs, the trial court affirmed the ZHB, concluding that the record supported the ZHB's findings with respect to the deficiencies in Developer's Application. Developer now appeals to this court.[5]

in addition to those expressed in this chapter, as it may deem necessary to implement the purposes of the Municipalities Planning Code and this chapter. The [ZHB] may grant approval of a special exception, provided that the applicant complies with the following standards for special exceptions and that the proposed special exception shall not be detrimental to the health, safety or welfare of the neighborhood. The burden of proof shall rest with the applicant. (1) the applicant shall establish by credible evidence compliance with all conditions on the special exception enumerated in the section which gives the applicant the right to seek the special exception. (2) The applicant shall establish by credible evidence that the proposed special exception shall be properly serviced by all existing public service systems. The peak traffic generated by the subject of the application shall be accommodated in a safe and efficient manner or improvements made in order to effect the same. Similar responsibilities shall be assumed with respect to other public service systems, including but not limited to police protection, fire protection, utilities, parks and recreation. (R.R. at 185a–86a.)

Section 135–284 of the Ordinance, which sets forth the required content of all applica-

tions for hearings before the ZHB, provides in relevant part:

A. All applications for hearings before the [ZHB] shall be made on forms adopted by the Board of Supervisors. . . . No application shall be complete until a site plan has been submitted. All applications requesting approval to establish . . . a nonresidential use . . . shall submit a plan drawn to scale . . . , which shall include all of the following:

. . .

(7) The dimensions (numbers shown), location and methods for illumination for signs and exterior lighting.

. . .

(14) Certification by the person who prepared the site plan.

(15) Certification of ownership and acknowledgement of plans signed by owner and developer.

(R.R. at 188a–89a.)

5. Where, as here, the trial court takes no additional evidence, this court's scope of review is limited to determining whether the ZHB has manifestly abused its discretion or committed an error of law. *In re Appeal of Neill*, 160 Pa.Cmwlth. 169, 634 A.2d 749 (1993). A conclusion that the ZHB abused its discretion may be reached only if its findings are not supported by substantial evidence.

◼ Initially, we recognize that a special exception is not an exception to a zoning ordinance but, rather, is a conditionally permitted use, allowed by the legislature if specifically listed standards are met. *Bray v. Zoning Board of Adjustment*, 48 Pa.Cmwlth. 523, 410 A.2d 909 (1980). Application for a special exception is to be granted or denied by the ZHB pursuant to the express standards and criteria set forth in the applicable zoning ordinance. *In re Brickstone Realty Corp.*, 789 A.2d 333 (Pa.Cmwlth.2001), *appeal denied*, 569 Pa. 723, 806 A.2d 863 (2002). Thus, what an applicant must demonstrate to obtain a special exception is determined on a case-by-case basis and will vary among municipalities based upon the use requested and the language in the ordinance. *In re Thompson*, 896 A.2d 659 (Pa.Cmwlth.2006), *appeal denied*, 591 Pa. 669, 916 A.2d 636 (2007). Once the applicant for a special exception meets his initial burden of showing compliance with all the objective requirements of the zoning ordinance, it is presumed that the proposed use is consistent with the promotion of local concerns relating to general health, safety and welfare, *Brickstone*, and, normally, the burden then shifts to any objectors to prove that the proposed use is, in fact, detrimental to the health, safety and general welfare of the community.[6] *Id.* In the present case, the ZHB concluded that Developer failed to meet its initial burden to demonstrate compliance with all of the

Ordinance's requirements, and Developer contends that this was error.

Developer first argues that its Application satisfies all the informational and objective requirements of the Ordinance for a special exception shopping center use, and the ZHB's contrary conclusion was unsupported by the record. We disagree.

In denying the Application, the ZHB identified numerous deficiencies in the Application and accompanying Plan, but it focused on Developer's failure to meet the Ordinance requirements regarding architectural style, signage, traffic and road improvements and lighting. We will address each of these concerns in order.

◼ Ordinance Section 135–122.C(5) requires that a development be constructed in accordance with an overall plan and be designed in a single architectural style with appropriate landscaping. According to Developer, a single architectural style, identified by Turnowchyk as mission/colonial, was proposed for the shopping center, and Turnowchyk also described the style's features through testimony and an illustration. Developer contends that any findings by the ZHB suggesting that Developer has not complied with Ordinance section 135–122.C(5) are unsupported by the evidence.

The ZHB recognized that evidence of an architectural style was named and submit-

---

*Id.* Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* Questions of credibility and evidentiary weight are solely within the province of the ZHB as fact finder, and the ZHB resolves all conflicts in testimony. *In re Brickstone Realty Corp.*, 789 A.2d 333 (Pa.Cmwlth.2001), *appeal denied*, 569 Pa. 723, 806 A.2d 863 (2002).

6. An ordinance, such as the Ordinance here, may alter this general presumption by provid-

ing that the burden rests on the applicant with regard to issues of detriment to the health, safety and welfare of the community. *Manor Healthcare Corporation v. Lower Moreland Township Zoning Hearing Board*, 139 Pa.Cmwlth. 206, 590 A.2d 65 (1991) However, in such a case, the applicant bears the burden of persuasion only, and the objectors retain the burden of production with respect to the general matter of detriment to health, safety and public welfare. *Id.*

ted in an artist's rendering. (Ex. A–6, R.R. at 1112a.) However, the ZHB found that the illustration depicted a single strip mall facility rather than the separate building pads shown in the Plan. The ZHB also found that Turnowchyk's testimony essentially described what *could* be done with the buildings, not what *would* be done,[7] and, consequently, there was no real plan presented demonstrating the intended design for the building. (Findings of Fact, Nos. 95–97.) Indeed, the Application itself states that "final architectural features shall be established during the land development phase." (R.R. at 1086a.)

■ The standard to be observed by the ZHB is whether the plan as submitted complies with specific ordinance requirements *at the time the plan comes before it. Edgmont Township v. Springton Lake Montessori School, Inc.,* 154 Pa.Cmwlth. 76, 622 A.2d 418 (1993). Based on the record before it *at the time of the hearing, (see e.g.,* N.T. at 141–53, 162, R.R. at 359a–69a, 380a), we conclude that the ZHB did not err or abuse its discretion in concluding that the Application and materials submitted with the Application failed to demonstrate full compliance with section 135–122.C(5).

■ Similarly, the ZHB's findings with respect to Ordinance section 135–284.A(7) (signage) are supported by the record.[8] Although the Plan's general notes promise that signage for the shopping center "shall" conform to Ordinance requirements, the Plan clearly states that "signage for this project has not yet been designed." (R.R. at 1144a.) Under these circumstances, the ZHB did not err in concluding that Developer failed to satisfy the Ordinance's signage requirement.

■ As to traffic and road improvements, the ZHB addressed at length Developer's failure to satisfy Ordinance section 135–283.D(2), which requires Developer to establish by credible evidence that the proposed shopping center is properly serviced by existing public service systems[9] and that the peak traffic generated by the shopping center will be accommodated in a safe and efficient manner. In response, Developer argues extensively that the ZHB erred in finding that Developer had not complied with this Ordinance requirement.[10]

7. Turnowchyk's testimony indicated only that the single style requirement of the Ordinance *could* be met and *would be met during the design phase.* In addition, the ZHB found that Matteson's testimony, (N.T. at 28, R.R. at 245a), made clear that the exact design of the buildings intended to be constructed was not known. (Findings of Fact, No. 22.)

8. Under section 135–284.A(7), the Application was required to include a plan showing the dimensions (numbers shown), location and *methods of illumination* for signs. Developer's Plan identified only one sign even though there was evidence that the shopping center will have additional signage that will be illuminated, (Findings of Fact, Nos. 39–41, 43–44), and witnesses presented by Developer did not know the exact number, dimensions, locations and style of the signs that would be erected. (Findings of Fact, Nos. 42, 45–49.)

These findings are supported by the record. (*See* N.T. at 41–42, R.R. at 258a–59a; N.T. at 68–69, R.R. at 285a–86a; N.T. at 149–51, R.R. at 367a–69a; N.T. at 182–85, R.R. at 400a–03a; N.T. at 418–20, R.R. at 638a–40a.)

9. As the ZHB points out, other than an uncorroborated statement made in its Application, Developer presented no evidence relating specifically to police or fire protection or to public water or sewer.

10. In its brief, Developer discusses at length the alleged legal effect that the Township's Impact Fees Ordinance has on the Application here. Developer explains that its Property is within the Transportation Service Area established by the Township pursuant to Article V–A of the Municipalities Planning Code, Act of December 19, 1990, P.L. 1343, *as amended,* 53 P.S. §§ 10501–A to 10508–A,

However, we need address this issue only briefly.

The ZHB found that Developer's evidence with respect to "overall transportation planning" suffered from a variety of problems. Through its findings, the ZHB observed that: the opinions of Bashore, Developer's traffic expert, often were premised on erroneous data and unfounded assumptions, (Findings of Fact, Nos. 59, 68, 70, 75, 77, 88, 89); the Plan either did not depict some of the assumptions made by Bashore or depicted them incorrectly, (Findings of Fact, Nos. 60, 62, 69, 79–80, 83, 91, 93–94); and Bashore identified many "necessary improvements" for the safe and efficient management of shopping center traffic, without providing information as to whether or when these could or would be installed or funded, (Findings of Fact, Nos. 63–64, 76–78, 81, 83). Again, these findings are supported by the record.[11] Indeed, when it came to access drives, Bashore described his traffic study as a "concept plan." (N.T. at 281, R.R. at 500a.)

■ Ordinance section 135–122.C(7) requires that lighting facilities be provided

which expressly authorizes municipalities to establish a funding source for needed road improvements identified by those municipalities in a Transportation Capital Improvements Plan (CIP). The prerequisite for a CIP is a Land Use Assumptions Report, which assumes and reflects projected land use development that may affect traffic within the Transportation Service Area covered by the CIP. Based on the CIP and pursuant to ordinance, the municipality may then fund the identified road improvements needed through the assessment of impact fees that are calculated and allocated equitably among all the new developments in the Transportation Service Area. To this end, the Township has enacted its Impact Fees Ordinance, under which payment of assessed impact fees is a prerequisite for new development.

Developer claims that the Township, having enacted its Transportation Capital Improvements Impact Fees Ordinance (Impact Fees Ordinance), acknowledged that improvements could be made to safely and efficiently accommodate traffic generated by the shopping center and employed a means to fund those needed improvements. Developer asserts that, before the shopping center is actually developed and opened, it will have to: contribute impact fees to the extent required by the Impact Fees Ordinance (anticipated to be $750,000); construct any on-site improvements required under the Township's Subdivision and Land Development Ordinance; and make any off-site improvements required by DOT for highway occupancy permits.

11. For example, Bashore identified traffic improvements assumed to be planned by the Township under the Township's CIP, but later acknowledged that the CIP upon which he relied was different from that subsequently adopted by the Township. (N.T. at 197–98, 216–17, R.R. at 415a–16a, 434a–35a.) Bashore also testified that the Plan incorrectly depicted the driveways to the shopping center, that he assumed a pattern of streets and access drives different from those shown on the Plan and that there would be a road connection to the shopping center that was not shown on the Plan. (N.T. 283–88, R.R. at 502a–07a; N.T. at 608, 627, R.R. at 830a, 849a.) Further, Bashore assumed that access to the Norlanco Medical Center would be through Developer's Property, even though it was not known if the owner of the Norlanco Medical Center property had consented or would consent to the changed access. (N.T. at 73, 218–19; R.R. at 290a, 436a–37a.) Similarly, Bashore testified that an access lane would be added on Cloverleaf Road where a convenience store is located, (N.T. at 270–71, R.R. at 489a–90a), necessitating removal of the store's sign and relocation of utilities poles, but it was unknown if the store would consent to this or if DOT would permit it. (N.T. at 599, R.R. at 821a.) In fact, in his testimony, Bashore identified certain necessary improvements required for the safe and efficient management of traffic generated by the shopping center, (see e.g., N.T. at 269–70, 606, 608, 676, 680–81; R.R. at 488a–89a, 828a, 830a, 898a, 902a–03a), but none were identified on the Plan, and Cafiero would not commit that Developer would construct them. (see e.g., N.T. at 396–97, 400–01, 414–16; R.R. at 616a–17a, 620a–21a, 634a–36a.)

and arranged in a manner that protects the highway and neighboring properties from any direct glare or hazardous interference. In addition, section 135–284.A(7) requires that an application to the ZHB seeking approval for a nonresidential use include a plan showing the dimensions (numbers shown), location and methods of illumination for signs and exterior lighting. Finally, section 135–187.D of the Ordinance requires that an applicant for a use authorized by special exception submit, *as part of the initial application for the special exception,* an exterior lighting plan, including

> a detailed grid of illumination levels, a calculation as to the average illumination levels, the number of lighting fixtures, the height and location of the mounting fixtures, including the underside of any canopies, details as to how lighting will be recessed and required details of how lighting will be shielded and the angle of the shielding when required, and details of any building or canopy-mounted lighting to show that the outline and roofline provisions have been met.

Ordinance sections 135–187.D(1) and (2). Developer maintains that the Application, supported by the testimony and exhibits, contains sufficient information to demonstrate compliance with the lighting requirements in the Ordinance because the Plan shows that lighting is arranged to eliminate the possibility of glare on the highway and neighboring properties and contains information sufficient to constitute a "lighting plan."

The ZHB found that Developer failed to submit an exterior lighting plan which demonstrated compliance with the Ordinance requirements, and, upon review, we agree that Developer's Plan does not address the requirements of sections 135–187.D(1) and (2). To the contrary, while the Plan's general notes state that

the lighting plan "utilizes .a 24′ high pole with metal halide fixtures fully shielded to prevent glare on adjacent properties and roadways," (ex. A–17, R.R. at 1144a), the notes also state that the lighting proposed is merely "conceptual in nature," and the Plan fails to address or include any of the other requirements of section 135–187.D(2), promising only that "the final lighting plan developed during the land development plan approval process shall conform to the requirements of section 135–187." (R.R. at 1144a.) Similarly, the narrative in support of the Application specifically states that it only includes a "conceptual exterior lighting plan," indicating that the lighting "will" comply with the requirements of section 135–187 and that "final building lighting details will be established during land development plan approval." (R.R. at 1087a; *see also* R.R. at 1089a.)

During his testimony on behalf of Developer, Matteson only confirmed the preliminary nature of the lighting proposed for the shopping center. He agreed that the entirety of the information on Developer's lighting was contained in two pages of the Plan, (N.T. at 69, R.R. at 286a), each containing identical information. Although Matteson testified that the Plan provides for adequate illumination that would not adversely affect neighbors, he testified further that the Plan does not provide any details for building and canopy lights and that such have yet to be developed because that lighting plan would be submitted to the Township based on the requirements of tenants who moved into the facilities. (Findings of Fact, Nos. 31–37; N.T. at 38–39, R.R. at 255a–56a.) Thus, the ZHB did not err in concluding that Developer failed to satisfy the lighting provisions of the Ordinance, and, under the express language in the Ordinance, the lighting details omitted from the Plan are information

that is **not** properly provided at a later stage of the proceedings. Accordingly, the ZHB would not err or abuse its discretion in denying Developer's Application on this basis alone.[12]

■ Finally, Developer argues that the ZHB erred and abused its discretion by denying the Application outright rather than issuing an approval with conditions imposed. We disagree.

■ Ordinarily, many of the types of details required for a special exception by the Ordinance here are addressed further along the permitting and approval process because zoning only regulates the use of land and not the particulars of development and construction. *Schatz v. New Britain Township Zoning Hearing Board of Adjustment,* 141 Pa.Cmwlth. 525, 596 A.2d 294 (1991). But where more stringent requirements are a part of a township's special exception requirements, it is proper for the ZHB to consider them. East Manchester Township *Zoning Hearing Board v. Dallmeyer,* 147 Pa.Cmwlth. 671, 609 A.2d 604 (1992). Even if an applicant demonstrates that it can comply with the ordinance requirements and promises to do so, the ZHB does not err in denying the application. Simply put, a concept plan is insufficient to warrant the granting

of a special exception; rather, to be entitled to receive a special exception, the applicant must come forward with evidence detailing its compliance with the necessary requirements. "Evidence is not a 'promise' that the applicant will comply because that is a legal conclusion the [ZHB] makes once it hears what the applicant intends to do and then determines whether it matches the requirements set forth in the ordinance." *Edgmont Township,* 622 A.2d at 419.

■ Thus, there simply is no duty on a zoning hearing board to grant a special exception with conditions.[13] The proper function of conditions is to reduce the adverse impact of a use allowed under a special exception, not to enable the applicant to meet his burden of showing that the use which he seeks is one allowed by the special exception. *Lafayette College v. Zoning Hearing Board of Easton,* 138 Pa. Cmwlth. 579, 588 A.2d 1323 (1991); *In re Appeal of Baird,* 113 Pa.Cmwlth. 637, 537 A.2d 976 (1988),[14] *appeal denied,* 521 Pa. 613, 557 A.2d 344 (1989). Where, as here, the applicant fails to meet all of the ordinance requirements for a special exception, we have long held that the ZHB properly denies the application. *Sheetz, Inc. v. Phoenixville Borough Council,* 804 A.2d 113 (Pa.Cmwlth.2002), *appeal denied,* 573

---

12. Because the record supports the ZHB's conclusion that Developer failed to satisfy all the Ordinance requirements, we need not address Developer's argument that the ZHB erred in considering future commercial development on adjacent Tracts C and D as a basis for denying the Application. Whether or not the ZHB erred in considering these tracts is of no moment as such error would not entitle Developer to relief in light of the Application's other deficiencies.

Developer also maintains that the ZHB erred to the extent it concluded that there was legally sufficient evidence of record to support a claim that the Plan was contrary to the public health, safety and welfare. However, in making this argument, Developer presumes

that its Application met the objective requirements of the Ordinance. Because we have determined otherwise, this argument must fail.

13. The cases cited by Developer for the proposition that approval with conditions is proper are land development and subdivision plan approval cases, not special exception cases.

14. Consistent with this principle, the Ordinance provides that, in granting a special exception, the ZHB may attach reasonable conditions and safeguards, *in addition to those expressed in this chapter,* as it deems necessary. Ordinance section 135–283.D.

Pa. 669, 820 A.2d 706 (2003); *In re Appeal of Neill,* 160 Pa.Cmwlth. 169, 634 A.2d 749 (1993); Edgmont Township; Lafayette; *Baird.*

Accordingly, we affirm.

President Judge LEADBETTER dissents.

## ORDER

AND NOW, this 1st day of October, 2007, the order of the Court of Common Pleas of Lancaster County, dated February 21, 2007, is hereby affirmed.