IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Martin J. Hacker and Patricia Hacker, :
                               Appellants :
                                        :
            v.                    : No. 1473 C.D. 2022
                                        : Argued: September 11, 2023
Zoning Hearing Board of the Borough :
of North Catasauqua, New Image :
Enterprises, LLC and Neel Shail, LLC :

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE STACY WALLACE, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                               FILED: November 30, 2023

       Martin J. Hacker and Patricia Hacker (collectively, Neighbors) appeal from the December 1, 2022 order of the Court of Common Pleas of Northampton County (Common Pleas) denying their appeal of the Borough of North Catasauqua (Borough) Zoning Hearing Board's (Board) order granting New Image Enterprises, LLC and Neel Shail, LLC (collectively, Landowners) numerous dimensional variances and a special exception to convert an existing church and rectory into a multi-unit apartment building and single-family home, respectively, and to separate the two uses through a subdivision. On appeal, Neighbors assert the Board erred in

concluding Landowners carried their burden of establishing the requirements for dimensional variances and a special exception. Upon review, we reverse.

## I. Background

Landowners' property, located at 1021 Fifth Street, North Catasauqua, Pennsylvania (the Property), is a 180-foot deep, rectangular-shaped lot with 80 feet of road frontage on Fifth Street. Board Dec., 4/22/22, at 4-5. The Property contains multiple structures, including a church, which was built in 1899, a rectory, which was built in 1950, a garage, and a brick shed. *Id.* at 5; Reproduced Record (R.R.) at 126a. These existing structures cover a significant portion of the Property. *See* R.R. at 126a.

The Borough placed the Property in the R-2 Zoning District (two-family residential) when it adopted its Zoning Ordinance (Ordinance)[1] in 1995. Board Dec., 4/22/22, at 3. Landowners now want to convert the existing church into a multiplex[2] with four one-bedroom apartments and the rectory into a single-family residence. *Id.* Landowners also want to subdivide the Property into two lots in order to separate the two uses. *Id.* at 3-4. Before seeking approval for their subdivision,[3] Landowners first applied to the Board for a special exception,[4] because a multiplex is only

---

[1] Borough of North Catasauqua, Pa. Zoning Ordinance (1995), *as amended*.

[2] The Ordinance defines a "multiplex" as "an attached multi-family dwelling with a minimum of three (3) dwelling units per building. Each multiplex building has yards on all four sides and may have shared and common elements among the units including but not necessarily limited to hallways and entranceways." Ordinance, § 502.

[3] We note that the proposed subdivision plan (which forms the basis for the variances requested) has not been approved by the Borough. Accordingly, any approval of the requested variances would need to be conditioned upon receipt of that subdivision approval. The Board did not impose such a condition here. Because we reverse on other grounds, however, we need not further address this issue.

[4] "[W]e recognize that a special exception is not an exception to a zoning ordinance but, rather, is a conditionally permitted use, allowed by the [Borough] if specifically listed standards are met."

permitted in the R-2 Zoning District by special exception. *Id.* at 3; *see also* Ordinance, § 402(1.3). In addition, Landowners applied to the Board for 11 dimensional variances,[5] including variances for the minimum lot widths, side yard widths, total lot areas, building coverage percentages, open areas, setbacks for all structures, and parking lot size, orientation, and spacing. Board Dec., 4/22/22, at 3.

The Board held a hearing on Landowners' requests on March 22, 2022. R.R. at 193a. Mark Zaffrano, owner of New Image Enterprises, LLC, testified and provided the Board with the following background information. Landowners purchased the Property approximately six months before the Board's hearing from a church group that had outgrown the space. *Id*. at 210a. Between the time of their purchase and the Board's hearing, Landowners' realtor spoke with four or five different church groups about their interest in utilizing the church building. *Id.* at 214a. Landowners' realtor also spoke with persons looking to bring in a private business (a hydroponics education center) and a community group. *Id.* at 215a. Ultimately, none of these entities pursued the Property, so Landowners decided to repurpose the Property into residential uses. *Id.*

Brian Gasda, Landowners' Engineer (Engineer), also testified before the Board. R.R. at 222a-23a. Engineer explained the subdivision plan and the need for each dimensional variance and the special exception. *See id.* at 224a-45a. Engineer opined that the existing structures on the Property do not conform to the Ordinance

---

*Elizabethtown/Mt. Joy Assocs., L.P. v. Mt. Joy Twp. Zoning Hearing Bd.*, 934 A.2d 759, 764 (Pa. Cmwlth. 2007) (citation omitted). "Application for a special exception is to be granted or denied by the [zoning hearing board] pursuant to the express standards and criteria set forth in the applicable zoning ordinance." *Id.* (citation omitted).

[5] "[U]nlike a special exception, a variance is not provided for in the zoning ordinance, but is permission to deviate from the ordinance in either the dimensions of the improvements made to the land or in the use of the land." *Nowicki v. Zoning Hearing Bd. of Borough of Monaca*, 91 A.3d 287, 291 (Pa. Cmwlth. 2014).

and are unique physical circumstances that cause Landowners an unnecessary hardship. *See id.* at 230a. Engineer repeatedly blamed this hardship for the need for dimensional variances, stating "[y]ou can't physically have the full setback and draw a line through [the Property] to make it even on both sides and provide the minimum setback," "it's impossible to divide th[is] into two lots and still meet the minimum lot area," and "the lot line has to be where it is, and that leaves us with slight shortage on the building coverage." *Id.* at 230a, 235a, 236a. Ultimately, Engineer opined that Landowners did not create the unnecessary hardship, the Property cannot be developed in strict conformity with the Ordinance, and the requested dimensional variances are necessary for the reasonable use of the Property. *Id.* at 236a-37a.

Although Landowners did not present any additional witnesses before the Board, the Board heard testimony from 11 concerned citizens, including Neighbors. *See* R.R. at 246a-77a. These citizens all opposed Landowners' development and subdivision of the Property, as they believed it would change the character of the neighborhood, reduce their property values, and exacerbate parking, traffic, and noise problems in the neighborhood. *See id.*

After hearing closing arguments from the parties, the Board voted to grant Landowners' requested special exception and dimensional variances. *Id.* at 293a-301a. The Board issued a written decision on April 22, 2022, wherein the Board found the existing church and rectory buildings were nonconforming uses that predated the Ordinance. Board Dec., 4/22/22, at 7. The Board deemed Mark Zaffrano credible and found that "[h]e pursued several uses of the property including as a church, youth group center, and hydroponic education center prior to pursuing the current proposed use," but "[u]ltimately, none of those options were feasible and Mr. Zaffrano now seeks to subdivide the property into two lots for residential use."

4

*Id.* at 8. The Board also found the existing buildings "do not meet many of the required building and parking setbacks, lot dimensions, ground cover, and open space requirements of the [Ordinance]." *Id.* at 9. The Board deemed Engineer credible and found, based upon his testimony, that "the buildings are pre-existing and the structures cannot be modified in size, and the variance requests arise from the unique physical characteristics of the [P]roperty, given how it was developed prior to the enactment of the Zoning Ordinance." *Id.* at 11. The Board also issued conclusions of law, determining:

> 11. Upon consideration of all the evidence presented by the [Landowners], the Board finds that [Landowners] have met all criteria for the grant of requested variances. Specifically, the Board finds that:
>
> a. The pre-existing structures on the [P]roperty create unique physical conditions peculiar to the [P]roperty and an unnecessary hardship on [Landowners];
>
> b. Due to the physical conditions of the [P]roperty, there is no possibility that the [P]roperty can be developed in strict conformity with the Zoning Ordinance, making a variance necessary to enable the reasonable use of the [P]roperty;
>
> c. No hardship has been created by [Landowners], as the structures are pre-existing;
>
> d. The requested variances are not detrimental to the public welfare; and
>
> e. The requested variances are the minimum necessary to afford relief and they represent the least modification of the regulations at issue.
>
> 12. [Landowners] having established the requirements for the requested variances, the Board likewise finds that [Landowners] have established the requirements for the special exception under the [Ordinance].

*Id*. at 27-28. The Board's written decision concluded with an order granting Landowners' requests for a special exception and numerous dimensional variances. *Id.* at 29-31.

Neighbors appealed the Board's order to Common Pleas, arguing the Board erred in finding Landowners met each of the requirements for its multiple dimensional variances. R.R. at 181a-82a. Neighbors also argued the Board erred in granting Landowners a special exception because Landowners needed to obtain numerous dimensional variances to be able to satisfy the requirements for a special exception. *Id.* at 183a.

Common Pleas reviewed the record of the Board's proceedings and did not receive additional evidence. R.R. at 321a-22a. With respect to Landowners' dimensional variance requests, Common Pleas concluded "there is no basis to disturb the Board's determination that [Landowners] met the necessary requirements for the requested dimensional variances." *Id*. at 327a. With respect to Landowners' special exception, Common Pleas opined "we cannot find that the Board . . . committed an error of law in permitting [Landowners] to use dimensional variances to meet the criteria for the special exception use of a multiplex." *Id.* at 328a. Accordingly, Common Pleas denied and dismissed Neighbors' appeal.

Neighbors appealed Common Pleas' decision to this Court. On appeal, Neighbors argue Landowners failed to carry their burden of proving they satisfy each requirement for the grant of a dimensional variance. Neighbors also argue the Board erred in determining Landowners met the criteria for a special exception, because Landowners needed numerous dimensional variances to meet the Ordinance's objective requirements for a multiplex.

6

## II. Analysis

Since "Common Pleas did not take additional evidence in this zoning appeal," this Court's role "is limited to reviewing the [Board]'s decision, not that of Common Pleas." *Dowds v. Zoning Bd. of Adjustment*, 242 A.3d 683, 695 (Pa. Cmwlth. 2020) (citation omitted). Thus, we evaluate whether the Board committed an error of law or abused its discretion. *Id.* Regarding whether the Board committed an error of law, we conduct a *de novo* review and "are not bound by the legal conclusions of the governing body or lower court[]." *EQT Prod. Co. v. Borough of Jefferson Hills*, 208 A.3d 1010, 1025 (Pa. 2019) (citation omitted). Regarding whether the Board abused its discretion, we will find an abuse of discretion "whenever the findings of the governing body are not supported by substantial evidence." *Id.* at 1024. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gorsline v. Bd. of Supervisors of Fairfield Twp.*, 186 A.3d 375, 385 (Pa. 2018).

### A. Variances

The party seeking a variance bears the burden of proof. *See Marshall v. City of Phila.*, 97 A.3d 323, 329 (Pa. 2014) (citation omitted). Section 910.2(a) of the Pennsylvania Municipalities Planning Code,[6] added by the Act of December 21, 1988, P.L. 1329, provides:

> (a) The [zoning hearing] board shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant. The [zoning hearing] board may by rule prescribe the form of application and may require preliminary application to the zoning officer. The [zoning hearing] board may grant a variance, provided that all of the following findings are made where relevant in a given case:

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. § 10910.2(a). We recently explained our specific analysis for dimensional variances as follows:

> Where, as here, we are faced with a dimensional variance as opposed to a use variance, our Supreme Court has articulated a more relaxed standard for granting a variance requiring a lesser quantum of proof. "When seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations." *Hertzberg* [*v. Zoning Bd. of Adjustment of*

*Pittsburgh*], 721 A.2d [43, 47 (Pa. 1998)]. Thus, "the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation." *Id.*

. . . .

Notably, however, while *Hertzberg* eased the requirements in the context of dimensional variances, it did not negate them . . . . *Tidd* [*v. Lower Saucon Twp. Zoning Hearing Bd.*], 118 A.3d [1, 8 (Pa. Cmwlth. 2015)] . . . . Where no hardship is shown, or **where the asserted hardship amounts merely to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied, even under the relaxed standard.** *Id.*

*Lawrenceville Stakeholders v. City of Pittsburgh Zoning Bd. of Adjustment*, 247 A.3d 465, 474 (Pa. Cmwlth. 2021) (emphasis added).

As set forth above, one criterion requires a variance applicant to demonstrate that it has not created the hardship that forms the basis for the variance. *See* 53 P.S. § 10910.2(a)(3). One example of a self-inflicted hardship is one that is created by a subdivision. *Nowicki v. Zoning Hearing Bd.*, 91 A.3d 287, 296 n.6 (Pa. Cmwlth. 2014) (citing *Jaquelin v. Zoning Hearing Bd. of Hatboro Borough*, 558 A.2d 189, 192 (Pa. Cmwlth. 1989) (stating that a subdivision of previously merged tracts into separate lots, one of which was undersized, constituted a self-inflicted hardship)); *see also Lawrenceville*, 247 A.3d at 475 (stating that a hardship was self-inflicted because a variance was needed only in order to subdivide the applicant's property).

Another criterion requires that the requested variance must represent the minimum remedy necessary to afford relief and the least possible modification of the zoning ordinance. 53 P.S. § 10910.2(a)(5). Thus, where no variance is needed to make reasonable use of the property, a requested variance necessarily does not constitute the minimum remedy that would afford relief. *Lawrenceville*, 247 A.3d

9

at 475 (citing *Dunn v. Middletown Twp. Zoning Hearing Bd.*, 143 A.3d 494, 505 (Pa. Cmwlth. 2016)).

Here, Landowners are creating the hardship by seeking to subdivide the Property without demonstrating the need to do so. There are already two uses on the Property, which in itself is nonconforming. Both uses are permitted as preexisting nonconforming uses. Landowners propose to change the church use to a multiplex, which is allowed by special exception, and to change the rectory to a single-family dwelling, which is a permitted use. Both proposed changes would reduce the existing nonconformity. However, there is no evidence that Landowners sought to make those changes by simply seeking a special exception for the multiplex without subdividing the Property.

The only evidence Landowners presented related to their need for pursuing their proposed development of the Property was that their realtor spoke with a handful of parties about utilizing the Property over a period of six months. *See* R.R. at 11a-110a. When the realtor's efforts were unsuccessful, Landowners chose their desired use of the property. *See id.* at 215a. Landowners did not present any testimony explaining whether the Property could continue to be used for its designed purposes. *See id*. at 11a-110a. Landowners did not present any evidence regarding their ability, or lack thereof, to conform the Property to the Ordinance's requirements. *Id.* Landowners also did not present any evidence as to the value, if any, of the Property if they were to use it consistent with the Ordinance. *Id.*

Landowners' lack of evidence regarding their need to complete the development they proposed is particularly problematic considering Landowners could have continued to use the Property's structures because the Board determined those structures were nonconforming structures that predated the Ordinance. *See*

10

*Dipal Corp. v. Chartiers Twp. Zoning Hearing Bd.*, 261 A.3d 1097, 1099 (Pa. Cmwlth. 2021) (citations omitted); *see also* Ordinance, § 901.  In addition, Landowners could have applied for a special exception to change the use of the structures to another nonconforming use.  *See* Ordinance, § 904.  Landowners have not shown they could not have kept the structures on one lot and changed the use of those structures without needing all the dimensional variances they requested.  They also have not shown that the proposed subdivision and the resulting need for variances arises from other than a desire to increase profits, which does not support variance relief.  *See Lawrenceville*, 247 A.3d at 474.

Landowners have not shown they were unable to make reasonable use of the Property without the requested dimensional variances.  *Dunn*, 143 A.3d at 505. Thus, Landowners have established only that they need dimensional variances to subdivide[7] the Property; therefore, they are "creating the alleged hardship [they] seek to remedy . . . ."  Accordingly, like the applicant in *Dunn*, Landowners have not shown they suffer from an unnecessary hardship, even under the relaxed standard set forth in *Hertzberg*.  *Lawrenceville*, 247 A.3d at 475 (citation omitted).

A "reasonable mind" would not accept Landowners' presentation of evidence as adequate to support the conclusion that Landowners suffer from an unnecessary hardship.  *See Gorsline*, 186 A.3d at 385.  The Board's contrary conclusion was not supported by substantial evidence and was, therefore, an abuse of discretion.  *Id.*

**B.     Special Exception**

A multiplex is "permitted as a special exception within the [R-2 Zoning District] provided that all of the standards and criteria for said use are satisfied."

---

[7] Landowners' decision to divide their 80-foot-wide Property, knowing the Ordinance requires each lot to be 50 feet wide, created the need for numerous dimensional variances as well as the very hardship Landowners complained about.

Ordinance, § 402(1.3). Without dimensional variances, Landowners' proposed subdivision does not meet many of the criteria for a multiplex use, including, but not limited to, the minimum lot area, open space percentage, setbacks, and building coverage limit. *See* R.R. at 126a; Ordinance, § 502(R-5). As a result, Landowners needed to obtain the dimensional variances they requested before they could qualify for a special exception. Since we have determined the Board abused its discretion in granting Landowners' numerous dimensional variance requests, Landowners also cannot establish they satisfy the standards and criteria for a multiplex use.

### III.   Conclusion

Landowners did not carry their burden of establishing they met the requirements for the Board to issue them numerous dimensional variances and a special exception. Accordingly, we reverse the trial court's decision affirming the Board's decision to grant Landowners' requested variances and special exception.

_____
STACY WALLACE, Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Martin J. Hacker and Patricia Hacker, :
                                 Appellants :
                                           :
                    v.                      : No. 1473 C.D. 2022
                                           :
Zoning Hearing Board of the Borough :
of North Catasauqua, New Image :
Enterprises, LLC and Neel Shail, LLC :

# **O R D E R**

    **AND NOW**, this 30th day of November 2023, the December 1, 2022 order of the Court of Common Pleas of Northampton County is **REVERSED**.

 

                                        _____
                                         STACY WALLACE, Judge