The BOROUGH OF LATROBE,

v.

P. Bret POHLAND, Caryl A. Pohland, his wife and Bret John Pohland, R. Scott Shearer and Karen A. Shearer.

ESTATE OF P. Bret POHLAND, Caryl A. Pohland, his wife and Bret John Pohland, Appellants.

Commonwealth Court of Pennsylvania.

Argued March 11, 1997.

Decided July 10, 1997.

Reargument Denied Aug. 21, 1997.

Anthony W. DeBernardo, Greensburg, for appellants.

James E. Kelley, Jr., Latrobe, for appellee, for Borough of Latrobe.

Donald J. Snyder, Jr., Latrobe, for appellees, Scott and Karen Shearer.

Before FLAHERTY and LEADBETTER, JJ., and SILVESTRI, Senior Judge.

FLAHERTY, Judge.

P. Bret and Caryl A. Pohland (Pohlands) appeal from an order of the Court of Common Pleas of Westmoreland County (trial court) permanently enjoining the Pohlands and their agents from conducting any commercial activity including the planting, cultivation, harvesting, heading or transportation of the flowers on the property at their residence for use in the business conducted by the wife petitioner. We affirm.

The factual background of this case is undisputed by the parties. In 1985, the Pohlands moved into their residence at 904 Hamilton Avenue in the Borough of Latrobe (Borough) in the same R–1 Single Family Residential Zone as their previous residences where Mrs. Pohland for at least eight years grew flowers with the help of only her husband and made them into the framed flowers which were sold off the premises. Although the Borough's Zoning Ordinance at all pertinent times prior to 1991 prohibited business usage, the Pohlands performed such activity without interference as it was considered a home vocational hobby and not a business. (Tr. Ct. Op. at 2.)

In 1991, however, they hired their first employee and eventually added until five to eight employees were engaged in just the planting through harvesting facets of the business and eight to twelve in the entire operation. The growth of the business is evident also from the increase in gross revenues from $293,191 in 1992 to $747,841 in 1995. Unfortunately for the Pohlands, their spirit of free enterprise also manifested itself with the appearance of the accoutrements necessary for their small industry, e.g. additional personnel with their vehicles visibly parked nearby, etc., which attracted the attention of neighbors who apparently alerted the Zoning Officer to the type of activity occurring.

The process of manufacturing the craft items which were sold consisted of planting, cultivation, heading, pressing and framing the flowers under glass with calligraphy notations beneath the flowers and finally the sale of the end products as craft items. On April 27, 1994, the Pohlands received a Notice of Zoning Violation/Cease and Desist Order (First Notice) from the Borough's Zoning Officer, which stated, *inter alia*, the following:

> [I]t has been determined that you are operating a business at your premises.... It is the understanding of this office that the business consists of making craft items, with employees coming upon the premises to perform this activity. Please be advised that ... [your] property is located in an R–1, Single Family Residential Zone in which *no business usage is permitted*. ...

(R., Plaintiff's Ex. 2 at 1)(emphasis in original). The First Notice continued by stating that: "enclosed [is] a copy of the applicable provision of the Latrobe Borough Zoning Ordinance outlining the permitted uses for your premises" and "all business activity must cease no later than ten (10) days from receipt of this letter." The First Notice additionally explained that legal action would be taken if business activity continued, and it set forth possible penalties for noncompliance and explained that the Pohlands had a right to appeal the Notice to the Zoning Hearing Board within twenty days of receipt.

The Pohlands did not appeal the First Notice, but continued growing flowers and assembling them into the final product while

attempting to amicably resolve the matter with the Borough by relocating the pressing and framing portions of their business to an adjacent property at the rear of their Hamilton Avenue property, which the Pohlands purchased for their business. The adjacent property is located in Derry Township, which has no zoning laws, but, having a house located thereon, has not the land area to supply flowers in sufficient commercial quantities for the Pohlands' business. Before moving the pressing and framing portions of their business, however, they signed an agreement ("Agreement") with the Borough, giving them additional time. This Agreement, dated August 30, 1994, was signed on behalf of the Borough by the Director of Administration and Finance for the Borough as well as by the Borough Solicitor.

The Pohlands admitted in the Agreement that a business activity had been occurring on the property which was a violation of the Borough's Zoning Ordinance.[1] "Business activities" were described therein as the creation of crafts from pressed flowers which involves approximately eight to twelve employees working upon the Hamilton Avenue premises. (R., Plaintiff's Ex. 4 at 1.) The Pohlands agreed that "no further business activity of any nature, frequency or degree not specifically permitted in writing by the Zoning Ordinance of the Borough will be conducted upon the premises ... on or after March 1, 1995," and the Borough agreed to delay any action to enforce the Cease and Desist Order until March 2, 1995. The Agreement was based on the Pohlands' representation "that they have obtained a location for the conduct of their craft business at some other location outside the Borough ... and that they require until March 1, 1995, to prepare said new location for the continuation of their business." *Id.* at 2–4. At the request of the Pohlands the following clause was additionally incorporated into the main body of the Agreement, becoming paragraph two (Paragraph Two) thereof:

It is understood and acknowledged that the subject property is presently developed with landscaped flower gardens, the product of which is utilized in the business operation. Nothing contained herein shall be construed to prohibit the continued cultivation of these flowers, in a manner and fashion similar to other residential properties, as well as the continued maintenance of the gardens for utilization in the business operation.

*Id.* at 2–3.

Because the Pohlands were unable to complete the move by the March 1 deadline, a second Notice of Violation dated March 6, 1995, (Second Notice) was delivered to the Pohlands' attorney on March 13, 1995. The Second Notice also referred specifically to "business activity" and was based entirely on the stipulations and representations contained in the Agreement. The Borough then filed a civil action before a District Justice seeking penalties for each day of violation beyond March 1, 1995. The District Justice found in the Borough's favor, and the Pohlands filed an appeal to the common pleas court, which matter is not presently before us.

On May 30, 1995, the Pohlands finally finished moving the pressing and framing operations previously housed in their home and garage to the adjacent property in Derry Township. They continued, however, to grow, cultivate and harvest the flowers on the subject property, utilizing for the live flower operation alone anywhere from five to eight employees during the two planting seasons (March and June) and up to five employees per day from April through October to head the flowers for ultimate framing.

On July 25, 1995, the Borough then filed a separate complaint in equity with the trial court seeking civil penalties (Count I) and to enjoin the continued cultivation of flowers by employees of the Pohlands for use in their

1. While Section 401(1)(c) of the Ordinance lists as a permitted principal use in an R–1 Residential Zone "[a]ny form of agriculture or horticulture," (R.R. at 559a.), Section 316 of the Ordinance specifically provides as follows:

§ 316. *Gardening and Greenhouses. Home gardening,* and accessory structures used for nurseries or as greenhouses, are permitted in residential areas, *provided they are used by the residents thereof for noncommercial purposes* ....

(R.R. at 557a)(emphasis added).

business (Count II), alleging that the Pohlands were continuing to engage in unpermitted business activity and that such use of employees violated the provision in the Agreement that such flowers are to be cultivated in a manner similar to other residential properties. Scott and Karen Shearer (Intervenors), who are adjacent land owners, were permitted to intervene, adopting Count II of the Borough's complaint as their sole pleading.

After viewing the property and hearing two and one half days of testimony, on June 26, 1996, the trial court issued an order permanently enjoining both the Pohlands and their agents or employees from conducting any commercial activity on the property, including the planting, cultivation, harvesting, heading or transportation of flowers for use in their business.[2] In its opinion, the trial court determined that it was bound to conclude that the Pohlands' commercial flower activities violated the Zoning Ordinance because of the Pohlands' failure to appeal the Notices of Violation. The trial court additionally concluded that the Agreement with the Borough was a nullity because it was an *ultra vires* act of "contract zoning." The Pohlands now appeal to this court.[3]

On appeal, the Pohlands raise the following issues for our review: (1) whether the trial court erred by basing its decision on issues that were outside the pleadings and first raised in the post-trial brief filed by Intervenors; (2) whether the Agreement between the Pohlands and the Borough was *ultra vires*; (3) whether the trial court erred in concluding that the Pohlands' failure to appeal from the two Notices of Zoning Violation/Cease and Desist Orders precluded them from growing flowers on their property; (4) whether the cultivation of flowers for use in a business is a permitted use under the Borough's Zoning Ordinance; and (5) whether the Pohlands' cultivation of flowers is permitted under the Agreement with the Borough.

The Pohlands argue that the trial court erred by determining (1) that the Agreement with the Borough was *ultra vires* and therefore a nullity and (2) that the Pohlands' failure to appeal the Notices of Violation resulted in a conclusive determination of zoning violation with respect to their flower cultivating activities because both of these issues were outside of the pleadings and were first raised in Intervenors' post-trial memorandum. Therefore, they argue that the trial court's actions in basing its decision thereon amounted to a *sua sponte* amending of the pleadings by the court, which was improper in light of the substantial prejudice resulting to the Pohlands in that these issues, being absent from the pleadings, were not the subject of any discovery or testimony at the hearing.

In *Township of Concord v. Concord Ranch, Inc.*, 664 A.2d 640, 646 (Pa.Cmwlth. 1995), we concluded that the common pleas court, in issuing a preliminary injunction against the violation of a zoning ordinance, erred by voiding a portion of an agreement entered between the landowner and the

---

**2.** The order of the trial court did not state that it was a final order or a decree nisi or that it would become final absent the filing of post-trial motions. In addition, although a motion for post-trial relief was filed by the Pohlands on July 5, 1996, there is no indication in the record that the trial court ever ruled upon that motion prior to July 26, 1996, when the Pohlands filed their notice of appeal to this court. As such, the trial court's order would appear to be interlocutory and in the nature of a decree nisi rather than a final decree. However, because the trial court's order provided for permanent injunctive relief to take effect immediately upon its entry, it is appealable as of right under the recently amended Pa. R.A.P. 311(a)(4)(i). Pa. R.A.P. 311 (Official Note). As Section 762(a)(4)(i) of the Judicial Code, 42 Pa.C.S. § 762(a)(4)(i), gives this court exclusive jurisdiction over final orders in all actions arising under a zoning code, the Pohlands' appeal is properly before us under Pa. R.A.P. 701, which provides that authorized appeals from interlocutory orders shall be taken to the appellate court having jurisdiction over final orders in such matters. Therefore, while the trial court should have been afforded an opportunity to rule upon the motion for post-trial relief, in the interest of judicial economy we will not remand but will address the merits of the appeal as the issues before us have already been thoroughly briefed and argued by the parties in this court.

**3.** Generally, appellate review over equity matters is limited to a determination of whether the chancellor committed an error of law or an abuse of discretion. *Kepple v. Fairman Drilling Co.*, 532 Pa. 304, 312, 615 A.2d 1298, 1302 (1992).

township based on the court's finding that the agreement was *ultra vires* because neither party to the action had challenged the validity of the agreement and the township had, in fact, conceded the validity of the agreement in its complaint in equity. In that case, however, we ultimately determined that the trial court's error was harmless as there were other grounds that provided a reasonable basis for the issuance of the preliminary injunction.

Here, the trial court based its decision on two arguments allegedly raised for the first time in Intervenors' post-trial memorandum (i.e. that the Agreement was *ultra vires* and that the Pohlands' failure to appeal the Notices resulted in a conclusive determination that their flower cultivation violated the Ordinance). The record on appeal, however, contains no such memorandum filed by Intervenors, and the remaining documents of record submitted by the parties below do not address the two legal arguments in dispute, save for the Pohlands' motion for post-trial relief. There is, therefore, no evidence before this court that the *ultra vires* "issue" upon which the trial court based its opinion was ever raised by the parties *at any time* before Pohlands' motion for post-trial relief.

Both counts in the Borough's complaint in equity are based, in part, on the validity of the Agreement and the Pohlands' asserted violation thereof. Moreover, Intervenors adopted Count II of the Borough's complaint as their sole pleading in this case, seeking to enjoin the continued use of residential property to grow and harvest flowers for commercial purposes. As such, Intervenors should not have been permitted to challenge the validity of the Agreement after testimony was concluded in the matter as this resulted in substantial prejudice to the Pohlands who were never given an opportunity to present argument or evidence in opposition. As such, the trial court abused its discretion by crediting such an argument in its decision, which, in effect, amounted to a *sua sponte* amendment of the pleadings.[4] With respect to the trial court's conclusion that the Agreement between the Borough and the Pohlands was *ultra vires*, we believe that the trial court erred in making such a conclusion *sua sponte*. *Township of Concord.*

■ With regard to the legal effect of the Pohlands' failure to appeal from the Notices of April 27, 1994 and March 6, 1995, however, unlike the *ultra vires* issue, we believe that the trial court did not raise the issue *sua sponte* about the Pohlands' failure to appeal either of the Notices of Violation, which precluded them from denying that the flower cultivating activities were part of a commercial business activity in violation of the Zoning Ordinance. The trial court correctly determined that a conclusive determination of violation resulted under the facts presented in the Notices. *At the hearing*, testimony was presented from the Borough Zoning Officer to the fact that the Pohlands did not appeal either Notice of Violation to the Zoning Hearing Board. (R.R. at 144a–45a, 535a.) We have repeatedly stated that such a failure to appeal renders the zoning officer's determination of violation unassailable under Section 616.1(c)(6) of the Municipalities Planning Code (MPC).[5] *Township of Maidencreek v. Stutzman*, 164 Pa.Cmwlth. 207, 642 A.2d 600, 602 (1994). Courts have reached this conclusion due, in part, to the fact that the Zoning Hearing Board is given exclusive jurisdiction to "hear and render final adjudications" in appeals from the issuance of a cease and desist order by Section 909.1(a)(3) of the MPC, 53 P.S. § 10909.1(a)(3). *See Township of Concord*, 664 A.2d at 647–48. As the Pohlands were not substantially prejudiced in that their fail-

---

4. Since the *ultra vires* issue should not have been considered by the trial court below, we will not address the second issue raised by the Pohlands as to whether or not the Agreement actually is *ultra vires*.

5. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10616.1(c)(6). That section provides:
 An enforcement notice shall state at least the following:

 . . . .
 (6) That failure to comply with the notice within the time specified, unless extended by appeal to the zoning hearing board, constitutes a violation, with possible sanctions clearly described.
 *Id.*

ure to appeal the Notices was the subject of testimony at trial and because such matters involving subject matter jurisdiction may be raised by a court *sua sponte, see Delaware County v. City of Philadelphia,* 153 Pa. Cmwlth. 167, 620 A.2d 666, 667 (1993), the trial court did not commit error by considering the legal consequences of the Pohlands' failure to appeal the Notices.

We conclude further that the trial court did not err by ultimately determining that the Pohlands' failure to appeal the Notices mandated the conclusion as a matter of law that their flower cultivating activities were in violation of the Borough's Zoning Ordinance. We reach this conclusion in spite of the fact that neither of the Notices of Violation sent to the Pohlands mentioned the planting, cultivation, heading, pressing or framing of flowers.

Section 616.1(c)(6) of the MPC dictates a conclusive determination of violation when a landowner, after receiving an enforcement notice, continues an allegedly unlawful use without appealing to the Zoning Hearing Board, and subpart (3) of that same subsection requires such enforcement notices at the very least to state "[t]he *specific* violation with a description of the requirements which have not been met." 53 P.S. § 10616.1(c)(3) (emphasis added).

■ Basically, the question raised is whether the Notice was sufficiently specific. The First Notice ordered the cessation of "all business activity" and also stated that "[i]t is the understanding of this office that the business consists of *making craft items.*" (R., Plaintiff's Ex. 2, at 2)(emphasis added). At the time the First Notice was sent, the planting, cultivating, heading, etc. of flowers were an integral part of the process for producing a craft item, but there is no evidence or indication that the Borough or its employees were aware of the intricacies of the various steps involved in the business. At the hearing before the trial court, the Zoning Officer who issued both Notices admitted on cross examination that the cultivation of flowers or flower activity was not specifically stated in the First Notice and agreed that the objectionable activity identified by the Borough

was "making craft items." (R.R. at 100a–101a.)

The Second Notice of Violation, which was sent to the Pohlands due to their failure to comply with the March 1 deadline, also specifically referred to "business activity" and was based entirely on the representations and conditions set forth in the Agreement with the Borough. The Second Notice did not mention any of the steps in the flower craft process but recited that pursuant to the Agreement with the Borough, the Pohlands had: stipulated that a business activity has been occurring on their property in violation of the Ordinance; "[a]greed that the Agreement shall be binding and conclusive evidence of the operation of the non-permitted business activity and the violation of the Zoning Ordinance"; agreed that each day of operation of the business beyond March 1, 1995 shall constitute a separate offense; "[a]greed that no further business activity of any nature, frequency or degree, not specifically permitted in writing by the Zoning Ordinance ... would be conducted upon the premises ... on or after March 1, 1995"; and agreed that if they failed to cease all business activity on the premises by March 1, 1995, the Borough could seek any and all available remedies, including fines and equitable relief. (R., Plaintiff's Ex. 5.) The Second Notice then ordered such activities to immediately cease.

■ The fact that the Notices of Violation did not further identify any of the other raw material procedures involved in "making craft items" does not make the Notices deficient for failure to specifically state the violation alleged as required by Section 616.1(c)(3) of the MPC. The Notices were adequate and sufficient to inform the Pohlands that the Borough intended to stop all "business activity" on their premises. That term was used in both Notices of Violation with the further explanation in the First Notice that the business referred to was making craft items. No authority is cited and we can find none which mandates that the Notice describe the steps of the manufacturing process used in "making craft items." The Notice not only stated the specific violation but it stated that it enclosed a copy of the ordinance provision

involved.[6] The Pohlands attempt to separate their craft-making operation into two parts: the growing of flowers and the assembly of crafts. Such a separation may assist them in their business organization but it does not amount to separate commercial activities which the Borough is presumed to be familiar with or would be required to acknowledge in its Notices.

We conclude that the Pohlands' failure to appeal the Notices did mandate a conclusive determination of zoning violation with respect to the growing, cultivating and harvesting of flowers even though those activities were not specifically mentioned as being unlawful in the Notices of Violation. *See Township of Concord,* 664 A.2d at 646. Simply stated, although the Borough did not mention the flower activities to be part of the illegal "business activity" addressed by the Notices, it did specify the type of commercial purpose, i.e. craft making, which included flower growing on the subject property. The descriptions included in the Notices should have alerted and given the Pohlands reason to appeal those Notices to the Zoning Hearing Board and argue that their live flower activities were not, in fact, a part of the craft-making business in violation of the Ordinance. As such, the trial court did not err by determining that the Pohlands' alleged violation of the Ordinance in growing and harvesting flowers was conclusively established due to their failure to appeal the Notices of Violation.[7]

■ Next, the Pohlands argue that their cultivation of flowers is permanently permitted under the terms of the Agreement. The terms of the Agreement, however, do not affect the conclusive determination of zoning violation resulting from the Pohlands' failure to appeal from the First Notice. Under the terms of the Agreement, the Pohlands acquired no greater right to conduct their commercial business activities than they had under the terms of the Ordinance itself. Paragraph Two of the Agreement states:

> It is understood and acknowledged that the subject property is presently developed with landscaped flower gardens, the product of which is utilized in the business operation. Nothing contained herein shall be construed to prohibit the continued cultivation of these flowers, in a manner and fashion similar to other residential properties, as well as the continued maintenance of the gardens for utilization in the business operation.

(R., Plaintiff's Ex. 4 at 2–3.)

Paragraph Two of the Agreement, quoted above, must, however, be read in context with paragraph three (Paragraph Three), which states:

> It is further agreed between the parties that, during the period of operation of said business from and after the date of the signing of this Agreement, until March 1, 1995, property owners will cause all business related vehicles off premises [sic] (and not at the curbside parking available to the premises). Further, there will be no offensive business activity (i.e., loud noise, lighting, etc.) during business operations, and particularly after 5:00 P.M. Lastly, there will be no Sunday business operations occurring whatsoever.

(R., Plaintiff's Ex. 4 at 3.)

A reading of the entire Agreement, particularly both Paragraphs Two and Three, clarifies the seeming anomaly in the last clause of

---

6. We note that the April 27, 1994 Notice stated that "a copy of the applicable provision" was enclosed; however, no such copy is included with the Notice in the record. (R., Plaintiff's Ex. 2.) Since the issue has not been raised of any failure to make specific numerical reference to the section of the zoning code alleged to be violated as required by Section 616.1(c)(3) of the MPC, *Township of Maidencreek,* the issue is waived. *Butler Township Area Water & Sewer Authority v. Department of Environmental Resources,* 664 A.2d 185, 187 (Pa.Cmwlth.1995), *petition for allowance of appeal denied,* 546 Pa. 684, 686 A.2d 1313 (1996).

7. As the violation of the Ordinance was conclusively established due to the Pohlands' failure to appeal the Notices to the Zoning Hearing Board, we need not examine the provisions of the Ordinance itself to determine whether the Pohlands' commercial flower cultivation and harvesting are permitted in their residential zone. Accordingly, we will not address the fourth issue raised on appeal, which is whether the cultivation of flowers for use in a business is a permitted use under the Borough's Zoning Ordinance.

Paragraph Two. The Agreement is dated August 30, 1994 and settles the course of conduct permitted the Pohlands until March 1, 1995. Although the last clause of Paragraph Two contains permission to maintain the gardens for use in the "business operation," this language does not purport to refer to or interpret the Borough's Zoning Ordinance or attempt to give the Pohlands any right to conduct commercial flower cultivation on their property beyond March 1, 1995, or beyond what they would have under the Ordinance itself. During the six month period, the Pohlands were permitted to continue some of their previous activities while preparing to move, such as using the product of their flower gardens in the business operation. Some of the business activities were curtailed, however, in Paragraph Three, such as the keeping of business-related vehicles off the premises and away from the curbside of the premises and no loud noise or lighting, especially after 5:00 P.M. In view of such restrictions, a savings clause was inserted so that nothing in the Agreement (i.e. "nothing contained herein") would interfere with "the continued maintenance of the gardens for utilization in the business operation." Such a clause is understandable in view of Pohlands' need to continue operating without interruption until they moved and also in view of the Borough's desire to avoid litigation by the six-month extension of time under controlled conditions.

The Agreement contained both the Pohlands' admission to previously conducting "business activity" and their covenant to discontinue that activity based on the four corners of that Agreement. The Agreement does not attempt to alter or amend the Ordinance. We have already concluded that the Pohlands' failure to appeal the First Notice conclusively determined that commercial flower cultivation is a violation of the Zoning Ordinance in the residential zone in which the Pohlands' property is located. In view of the Borough's knowledge in May of 1994 that the Pohlands' failure to appeal was an admission to violating the Ordinance, we do not believe the Agreement can be interpreted to mean that the Borough thereafter intended to permit the permanent continuation of commercial flower growing as the Pohlands as-

sert. The Pohlands' agreement with the Borough does not, therefore, abrogate the provisions of the Borough's Zoning Ordinance. The trial court correctly concluded that the Pohlands' commercial cultivation of flowers is prohibited within their zoning district.

 In summary, while the trial court may have committed some errors of law in its reasoning, the conclusion that it reached in its graphic and well-written opinion was ultimately correct as we have determined that a violation of the Ordinance was conclusively established with respect to the Pohlands' commercial cultivation and harvesting of flowers due to their failure to appeal the Notices and such result is not superseded by the Agreement between the parties. As such, any errors committed by the trial court were harmless. *See Township of Concord,* 664 A.2d at 646. This court can affirm the judgment of a trial court where the result below is correct, even though the reason given by the trial court is erroneous, when the correct basis for the decision is clear on the record. *Rhoads v. Lancaster Parking Authority,* 103 Pa.Cmwlth. 303, 520 A.2d 122, 131 (1987). As the cultivation of flowers for commercial purposes in this residential neighborhood was continued by the Pohlands after due notice and was conclusively established to be a violation of the Borough's Zoning Ordinance, the Pohlands were properly enjoined from continuing such activity. The order of the trial court is accordingly affirmed.

### ORDER

NOW, July 10, 1997, the order of the Court of Common Pleas of Westmoreland County at No. 5111 of 1995, dated June 26, 1996, is hereby affirmed.

LEADBETTER, J., dissents.