IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Stipkovic,                           :
                                            :
                    Appellant               :
                                            :
            v.                              : No. 779 C.D. 2024
                                            : Submitted:  May 6, 2025
Zoning Hearing Board of New                 :
Stanton and Borough of New Stanton          :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE STACY WALLACE, Judge
          HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                             FILED:  June 23, 2025


          Robert Stipkovic (Landowner) appeals from a decision of the Court of
Common Pleas of Westmoreland County (trial court) affirming the decision of the
Zoning Hearing Board of New Stanton (ZHB).  On appeal, Landowner argues, *inter
alia*, that, as to a number of violations, the Borough of New Stanton's (Borough)
Zoning Enforcement Notice (Notice) was facially deficient under Section 616.1 of
the  Pennsylvania  Municipalities  Planning  Code  (MPC)[1]  and  is  therefore
unenforceable as to those violations.  Upon careful review, we affirm in part and
reverse in part.

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L.
1329, 53 P.S. §10616.1.

## I. Background

Landowner is the property owner of 430 South Center Avenue, New Stanton, Pennsylvania (Property), from which he operates an auto service and repair business. The Property is situated in one of the Borough's B-2 Neighborhood Zoning Districts. Before purchasing the Property in 2020, Landowner sought a special exception from the Borough for the purpose of operating his business on the Property.

In a decision dated May 12, 2020, the ZHB granted Landowner's request for a special exception (the Special Exception). In relevant part, the ZHB recounted as findings of fact some of Landowner's representations regarding his intended use of the Property. These representations primarily related to his intention to keep his work inside while maintaining sight lines along public rights of way. For example, the ZHB found as fact that Landowner would not expand the existing structure on the Property and that only existing accessways would be used. ZHB's Decision, 5/12/20, at Finding of Fact (F.F.) No. 10. Landowner would not conduct any work outside of the building and would install three to four auto lifts inside the building for the purpose of conducting work inside. *Id*. at F.F. No. 11. Similarly, the building would be able to store nine to ten vehicles inside "safely limiting the need for outside storage of vehicles." *Id*. at F.F. No. 12. The ZHB also found that the "Ordinance requires the installation of a fifteen-foot buffer yard between the northern end of the structure and the adjoining property." *Id*. at F.F. No. 22.[2] Finally, the ZHB acknowledged Landowner's intention "to erect some barrier along [the Property] to reduce the cross-through traffic between Oak Street and Center Avenue in addition to the existing landscape area." *Id*. at F.F. No. 23.

---

[2] *See* Section 513 of the Borough's Zoning Ordinance, §27-513 (governing landscaping and buffer yards). Section 513 can be found in the Reproduced Record at 119a-26a.

2

The ZHB consequently imposed the following conditions alongside its grant of the Special Exception:

1. No outside storage of used tires or auto parts.

2. No vehicles to be stored for use as salvage or parts vehicles.

3. No loud music.

4. Saturday hours from 9:00 AM to 3:00 PM, weekday hours from 9:00 AM to 5:00 PM.

5. [Landowner] to maintain private storm water catch basins.

ZHB's Decision, 5/12/20, at 9.

Thereafter, the Borough discussed Landowner's purported failure to follow the assurances that he made to obtain the Special Exception, the conditions imposed by the special exception, and the Borough's Zoning Ordinance, at numerous Borough meetings. ZHB's Decision, 8/23/23, at F.F. No. 7. As a consequence, in the Notice dated January 5, 2023, the Borough cited Landowner with a multitude of violations of the Borough's Zoning Ordinance and the Special Exception. For ease of reference, the violations relevant to this stage of proceedings are reproduced here:

[Landowner] is in violation of the following sections of the *Findings of Fact, Conclusions of Law and Decision* issued by the [ZHB in the Special Exception]:

* * *

11. The building would store 9 to 10 vehicles safely limiting the need for outside storage of vehicles. **Violation: Number of vehicles parked outside the garage exceeds the number allowed.**

3

22. The Ordinance requires the installation of a fifteen-foot buffer yard between the northern end of the structure and the adjoining residential property. **Violation: This work was never completed.**

23. Applicant intends to erect some barrier along [the P]roperty to reduce the cross-through traffic between Oak Street and Center Avenue in addition to the existing landscape areas. **Violation: Additional landscaping was not installed and the original landscaping was torn out resulting in vehicles being parked extremely close to the intersection of S. Center Avenue and Oak Street limiting the site of drivers resulting in a hazardous condition.**

35. The specific criteria for the [S]pecial [E]xception permitting the operation of an auto service and repair facility in AB-2, Neighborhood Commercial District, are found in §607(1) of the [Borough's Zoning] Ordinance and are as follows:

> A. All minor repair work, vehicle washing, waxing, detailing, lubrication and installation of parts and accessories shall be performed within an enclosed building. **Violation: Work is being done outside.**
>
> C. All vehicle parts, dismantled vehicles and similar materials shall be stored within an enclosed building or totally screened from view by a solid or privacy fence. **Violation: Dismantled vehicles are being stored outside and are not screened.**
>
> D. All vehicles awaiting repair shall be stored on the lot in an approved storage area and, in no case, shall said vehicles be stored on or obstruct access to a public right-of-way. **Violation: Dismantled vehicles are being stored outside and are not screened.**

4

* * *

44. Applicant intends to have nine fixed spaces in addition to open areas for parking. **Violation: An excessive number of cars have been parked on the site, in some instances 22 cars have been parked haphazardly on site. This does not include vehicles stored inside.**

Reproduced Record (R.R.) at 93a-94a (emphasis in original).

Landowner filed a timely appeal to the ZHB, which held hearings on the matter on April 10, 2023, May 8, 2023, June 12, 2023, and July 17, 2023. Ultimately, Landowner's appeal succeeded in small part, but failed as to the violations reproduced above. ZHB's Decision at 9.

On appeal to the trial court, Landowner argued that (1) as to violations 11, 22, 23, and 24, the Borough's notice was insufficient under Section 616.1(c)(3) of the MPC for failure to cite specific ordinance violations; (2) the ZHB misinterpreted and misapplied Section 606(1)(C) and (D) of the Borough's Zoning Code; (3) the ZHB rendered internally inconsistent determinations regarding violations 10 and 35(A); and (4) the ZHB abused its discretion in concluding that violations 22, 35(A) and 35(C) were supported by substantial evidence. Trial Court's Op., 5/15/24, at 4, 6-7.

The trial court primarily affirmed the ZHB's decision.[3] In pertinent part, the trial court reasoned that the Borough's Notice referenced specific findings of fact within the Special Exception such that the Notice complied with Section 616.1 of the MPC. Trial Court's Op. at 5. In any case, relying on *Three Rivers Aluminum Co. v. Zoning Hearing Board of Marshall Township*, 618 A.2d 1165,

---

[3] One violation, violation 20, is not recounted here although the ZHB denied Landowner's appeal of that violation. Both the Borough and the ZHB conceded that the ZHB erred in its decision below. Consequently, the trial court reversed the determination concerning that violation. *See* Trial Court's Op. at 7-8.

1168 (Pa. Cmwlth. 1992), the trial court noted that even if a deficiency in the Notice did exist, that Landowner failed to demonstrate how the alleged deficiency caused him any prejudice. Because Landowner was able to effectively appeal the Notice and receive a full and fair hearing, the trial court found that nothing warranted setting aside the Notice. Trial Court's Op. at 5.

Next, the trial court agreed with the ZHB's grant of violations 35(C) and (D). Trial Court's Op. at 6. Landowner argued that the ZHB's finding that "dismantled vehicles [were] being stored outside and [were] not screened," could only support a violation of Section 606(1)(C) of the Zoning Ordinance but not Section 606(1)(D). Relying on testimonial and photographic evidence, the trial court observed that "[t]here is no reason, however, that the same conduct cannot violate multiple, different portions of a zoning ordinance." *Id*. Similarly, the trial court was nonplussed by the ZHB's internal inconsistencies regarding violations 10 and 35(A), both of which related Landowner's admission that he sometimes completed repair work outside. "The fact that the ZHB chose, for whatever reason, to grant the appeal as to violation 10 does not vitiate the fact that the denial of the appeal as to 35(A) is fully supported by the record." *Id*. at 7.

Finally, regarding violation 22, the trial court found that Landowner's reliance on a neighbor's assurance that Landowner did not need to erect a buffer yard between the adjoining properties could not serve to override the Special Exception. Trial Court's Op. at 8. Concerning violations 35(A) and (C), the trial court believed that Landowner's testimonial admissions alone were sufficient to support the ZHB's findings with substantial evidence. *Id*. at 8-9.

6

## II. Issues

Before this Court,[4] Landowner once again presents the following issues for our review: (1) whether the decisions below erred by concluding the Notice complied with Section 616.1(c)(3) of the MPC[5] for failure to adequately cite an alleged violation of the Borough's Zoning Ordinance; and (2) whether the conduct alleged in violation 35(D) of the Notice constitutes a violation of Section 27-606(1)(D) of the Borough's Zoning Ordinance. Additionally, as below, Landowner argues that the ZHB and trial court erred in concluding that substantial evidence supports a finding that Landowner violated (3) Section 27-513 as alleged in violation 22; (4) Section 27-606(1)(A) as alleged in violation 35(A); and (5) Section 27-606(C) as alleged in violation 35(C).

## III. Discussion

### A. Sufficiency of Notice

Preliminarily, Section 616.1(c) of the MPC, 53 P.S. §10616(c), provides: "An enforcement notice shall state at least the following: . . . (3) [t]he specific violation with a description of the requirements which have not been met, citing in each instance the applicable provisions of the ordinance." We have

---

[4] Where, as here, the trial court takes no additional evidence, our review is limited to determining whether the ZHB committed an error of law or an abuse of discretion. *Elizabethtown/Mt. Joy Associates L.P. v. Mount Joy Township Zoning Hearing Board*, 934 A.2d 759, 763 n.5 (Pa. Cmwlth. 2007). This court may conclude that the ZHB abused its discretion only if its findings of fact are not supported by substantial evidence. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

[5] Landowner also asserts that the decisions below failed to comply with Section 27-810(3)(C) of the Borough's Zoning Ordinance. Landowner's Brief at 4. This provision of the Borough's Zoning Ordinance is nearly identical to Section 616.1(c)(3) of the MPC. For ease of discussion, we will refer solely to the MPC's provision.

interpreted this requirement to be mandatory, such that a municipality's failure to satisfy this requirement may render an enforcement notice invalid. *Township of Maidencreek v. Stutzman*, 642 A.2d 600, 601 (Pa. Cmwlth. 1994). Indeed, such a failure precludes the municipality from seeking penalties under Section 617.2 of the MPC, 53 P.S. §10617.2. *City of Erie v. Freitus*, 681 A.2d 840, 842 (Pa. Cmwlth. 1996). In determining the validity of an enforcement notice, we examine only the "four corners of the document." *Township of Lower Milford v. Britt*, 799 A.2d 965, 971 (Pa. Cmwlth. 2002).

While Landowner does note that, as to violations 11, 22, 23, and 44, the Borough's Notice failed to cite any specific numerical reference to a violation of the Borough's Zoning Ordinance, Landowner believes that the ZHB and trial court misapprehended his argument on this point. Landowner's Brief at 17-19. Landowner is *not* suggesting that the conditions imposed by the Special Exception are not enforceable and may not serve as the basis for a violation in an enforcement notice. *Id*. at 19, 21. Rather, Landowner is arguing that the *findings of fact* which precede the conditions in the ZHB's Special Exception may not serve as the basis for a violation in an enforcement notice. In other words, Landowner believes that the findings of fact referenced in violations 11, 22, 23, and 44 "have nothing to do" with the five conditions imposed by the Special Exception. *Id*. at 19- 21. To conclude as the ZHB and trial court did, Landowner cautions, "would result in every paragraph contained within the Special Exception" as being construed as a special condition. *Id*. at 22.

As a threshold matter,[6] the Borough responds that Landowner has waived the issue concerning the enforceability of the Special Exception's finding of facts and conclusions of law and that his arguments concerning that issue should be limited to whether the Notice included a numerical reference to the Borough's Zoning Ordinance. Borough's Brief at 20-22. Substantively, the Borough responds that it was legally proper for the Notice to cite findings of facts or conclusions of law from the Special Exception as the memorialization of Landowner's "representations and promises about how he would operate an auto service and repair business on the Property." Borough's Brief at 28. In each instance, the Borough proffers, Landowner made express statements regarding his intended use of the Property for the purpose of obtaining the Special Exception. Thus, the Borough considers each representation made for that purpose an enforceable condition – enforcement of which the Borough afforded proper notice. *Id*. at 30-31 (citing, *e.g.*, *City of Pittsburgh v. Elman Associates, Inc.*, 291 A.2d 813 (Pa. Cmwlth. 1972)).

It is true that neither the ZHB nor the trial court directly opined on the issue of the enforceability of a finding of fact in the Special Exception. However, this is not because of Landowner's failure to raise the argument as the Borough would have us believe. *See* Borough's Brief at 22. Indeed, beginning with his appeal from the Notice, Landowner was arguing that the Borough had misinterpreted or misapplied the findings of fact within the Special Exception in relation to the sufficiency of the Notice under Section 616.1(c) of the MPC, *see* R.R. at 140a, nor did Landowner abandon this claim before the trial court. *See id*. at 483a-84a. In fact, before the trial court, Landowner argued: "Quite simply, Your Honor, a finding

---

[6] Although the ZHB does not join the Borough's argument as to waiver, the ZHB's Brief is in most other respects similar to the Borough's. As such, we will only recount the ZHB's arguments to the extent it offers a different argument.

9

of fact or a conclusion of law cannot serve as an underlying basis for a violation. [A]bsent a citation to a provision of the [Borough's Zoning Ordinance] to support that, it's our position that those four citations should be dismissed or reversed on appeal." Landowner's Omnibus Reply Brief, Appendix A, at 9. That neither the ZHB nor the trial court squarely addressed this argument is not a matter of issue waiver, rather it is a matter of the peculiar manner in which Landowner has advanced this claim.

Indeed, although Landowner's argument on this point masquerades as an issue of *notice*, the crux of his argument relates to the enforceability of a finding of fact within the Special Exception. Stated differently, Landowner does not argue that he was unaware of the Borough's intention to enforce specific provisions of the Special Exception or that he was made unable to defend against this alleged violation because of the insufficiency of the Notice. Rather, Landowner chose to defend against this violation by attacking a purported *procedural* defect instead of more forthrightly attacking the purported *substantive* defect. However, as indicated by Landowner's compelling argument against issue waiver, Landowner has – at all events – argued this point as a matter of Section 616.1(c) of the MPC. *See* Landowner's Omnibus Reply Brief at 2-8. In fact, Landowner argues:

> It appears that in arguing waiver, the Borough attempts to draw a distinction between [Landowner's] arguments that: (1) the [] Notice is deficient for failure to cite to the Zoning Ordinance; and (2) that the [] Notice is deficient because a finding of fact or conclusion of law from the [] Special Exception [] cannot serve as the basis for a violation of the Zoning Ordinance. **Initially, there is no distinction – the second point is merely an expansion on the first**.

*Id.* at 5 (emphasis added). While Landowner may be correct that these arguments are not distinct as a matter of issue waiver, Landowner is incorrect that Section 616.1(c) of the MPC contemplates more than a face-value analysis.

For example, in *Three Rivers*, 618 A.2d at 1167, we held that the landowner's argument concerning the sufficiency of the municipality's enforcement notice was "unfounded." In upholding the validity of the enforcement notice, we observed that the notice included reference to previous litigation between the parties as well as specific provisions of the municipality's ordinance, such that the landowner "was advised as to the specific violations at issue." *Id.*

In *Maidencreek*, 642 A.2d at 601-02, this Court considered whether a municipality's reference to its zoning ordinance generally, rather than a specific provision, satisfied Section 616.1(c)'s requirement to notify a landowner by citing the "applicable provision[] of the [o]rdinance." We held that "[a]lthough the term 'cite' can have a broader meaning than a numeric reference to an ordinance authority . . . as used in [S]ection 616.1(c)(3), ['cite'] means a specific numerical reference to the ordinance section which the [municipality] asserts the landowner[ has] violated." *Id.* at 602. Because the municipality's enforcement notice did not include a specific numerical reference to the borough's zoning ordinance, we held that its enforcement notice failed to comply with Section 616.1(c) of the MPC. More recently, this Court issued a nearly identical outcome in *Township of Robinson v. Esposito*, 210 A.3d 1146, 1149-50 (Pa. Cmwlth. 2019). Therein, the municipality alleged that the landowner's use of its property amounted to "a violation of the Ordinances" of the municipality. *Id.* We concluded that: "This general assertion fails to adequately state any specific violation with a citation to the applicable provision of the local ordinance allegedly violated, as required by the MPC." *Id.*

11

In dealing with the preceding clause of Section 616.1(c)(3), 53 P.S. §10616(c)(3) ("The specific violation with a description of the requirements which have not been met . . ."), this Court has found even vaguely asserted violations to satisfy the MPC when the enforcement notice nevertheless informs the landowner of how he might cure the purported violation. *See Township of Lower Milford*, 799 A.2d at 970-71; *Borough of Latrobe v. Pohland*, 702 A.2d 1089, 1098 (Pa. Cmwlth. 1997) ("The [enforcement notices] were adequate and sufficient to inform the [landowners] that the [b]orough intended to stop all 'business activity' on their premises.").[7]

In each instance, whether finding notice valid or invalid, these cases refrained from engaging in more than a face-value analysis of whether the municipality's enforcement notice informed the landowner as to the *precise* authority being relied on by the municipality (including a specific citation to the municipality's zoning ordinance) or the specific conduct complained of.[8] We

---

[7] *See In re Pinecrest Golf Club, Inc.* (Pa. Cmwlth., No. 1444 C.D. 2023, filed April 1, 2025), slip op. at 13-14. *See also* Pa. R.A.P. 126(b)(1)-(2) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. [] Non-precedential decisions . . . may be cited for their persuasive value.").

[8] Here, we find it prudent to note that Landowner strongly disagreed with the trial court's reliance on *Three Rivers*. In particular, Landowner argues that, contrary to the trial court's reasoning, neither *Three Rivers* nor any other caselaw imposes a prejudice prerequisite to set aside the notice of enforcement under Section 616.1(c) of the MPC. Landowner's Omnibus Reply Brief at 10-11.

First, we note that the trial court's reliance on *Three Rivers* for this proposition is not squarely on point. Therein, this Court found that the municipality may have "technically" violated Section 616.1(c)(5) of the MPC by failing to advise the landowner of its right to appeal to the respective zoning hearing board within a certain time. *Three Rivers*, 618 A.2d at 1168. Yet, the landowner did "not argue that it was prejudiced in any way by the zoning officers' omission[,]" and nevertheless filed a timely appeal and received a full and fair hearing. *Id*. We therefore **(Footnote continued on next page…)**

12

certainly did not analyze whether the alleged violation cited a properly enforceable provision of the municipality's zoning ordinance or whether the conduct complained of was actually violative of the same. Indeed, whether an ordinance provision properly applies is a question routinely answered by zoning hearing boards across the Commonwealth, but as a matter of substance, not as a matter of notice. Otherwise, any violation which is subsequently denied by a zoning hearing board would constitute deficient notice for failure to cite an "applicable" provision of the zoning ordinance. Thus, for the purposes of Section 616.1(c)(3), we must assess whether the enforcement notice sufficiently informed the landowner for purposes of conforming his conduct to cure the violation or to prepare a defense before the ZHB, and we must also cabin Landowner's arguments to that effect.

Here, the Notice specifically cites the provision of the Borough's Zoning Ordinance, Section 27-604, which empowers the Borough to attach "reasonable conditions and safeguards" to the grant of a special exception. R.R. at 93a. The Notice then cites "the following sections of the *Findings of Fact, Conclusions of Law and Decision* issued by the [ZHB]" and numbers each violation consistently with the corresponding finding of fact in the Special Exception. *Id*. at 93a-95a (emphasis in original).

---

reasoned that the landowner's substantive rights were not affected and that the zoning hearing board was correct in upholding the validity of the enforcement notice. *Id*.

Given the analysis discussed *infra*, we believe the trial court may have over read *Three Rivers*. In any case, we do not understand *Three Rivers* to impute a prejudice requirement onto Section 616.1(c)(3) of the MPC. To the extent *Three Rivers* is probative in this matter, we again note that, like here, its discussion concerning Section 616.1(c)(3) of the MPC focused on whether the landowner "was advised to the specific violations at issue[,]" without engaging in further analysis. *Three Rivers*, A.2d at 1167.

13

As such, at least as to violations 11, 23, and 44, Landowner was well-informed as to the specific violations complained of and the exact authority upon which the Borough relied. The Notice therefore afforded Landowner the ability to conform his conduct thereto or to prepare a defense against the enforcement of those violations before the ZHB. Whether the findings of fact or conclusions of law are properly enforceable under the Borough's Zoning Ordinance or the MPC is an issue entirely separable from the issue that Landowner has advanced from the very beginning of his appeal: defective notice under Section 616.1(c)(3) of the MPC. Thus, even if we share Landowner's concerns regarding the enforceability of the Special Exception's findings of facts – and we very well might – this issue is not contemplated by an analysis under Section 616.1(c) of the MPC; and neither the trial court nor the ZHB erred on this point.

We do not find this logic applicable to violation 22, however. Where the Borough represents violations 11, 23, and 44 as standalone conditions within the Special Exception, violation 22 is just a vague restatement of what purports to be a provision of the Borough's Zoning Ordinance. Indeed, violation 22 only generally cites "[t]he Ordinance." *See* R.R. at 94a. This stands in stark contrast to violation 35 and its subparagraphs which cite Section 607(1) of the Borough's Zoning Ordinance. *Id.* Were we to sanction the sufficiency of the Borough's notice in this manner, we would be permitting the Borough to frustrate the MPC's mandatory notice requirements by way of an intermediary: the Special Exception.[9] *Maidencreek*, 642 A.2d at 602; *Robinson*, 210 A.3d at 1149-50. Because, as to

---

[9] The Borough's argument that violation 22 represents Landowner's promise to comply with the Zoning Ordinance is immaterial to this analysis, *see* Borough's Brief at 30, as the Borough's Zoning Ordinance is enforceable with or without Landowner's alleged promise to comply therewith. Stated differently, this assertion is a weak basis on which to permit the Borough to frustrate the MPC's notice requirements.

violation 22, the Notice hindered Landowner's ability to prepare a defense before the ZHB – by failing to cite the exact provision of the Borough's Zoning Ordinance – violation 22 failed to comply with Section 616.(1)(c)(3) of the MPC and is consequently invalid.[10]

## B. Section 606(1)(D) of the Borough's Zoning Ordinance

For ease of reference, Section 606(1)(C) of the Borough's Zoning Ordinance provides: "All vehicle parts, dismantled vehicles and similar materials shall be stored within an enclosed building or totally screened from view from adjacent properties and any public or private roadway by a solid or privacy fence." R.R. at 127a. Section 606(1)(D) of the Borough's Zoning Ordinance provides: "All vehicles awaiting repair shall be stored within an enclosed building or totally screened from view by a solid or privacy fence; and in no case shall said vehicles be stored on or obstruct access to a public right-of-way." *Id*. at 127a-28a. The Notice alleged that the same purported conduct violated both provisions of the Zoning Ordinance: "dismantled vehicles are being stored outside and are not screened." *Id*. at 94a.

Landowner argues that his conduct, as alleged in the Borough's Notice at violation 35(D), cannot support a violation of Section 606(1)(D) of the Borough's Zoning Ordinance. Landowner's Brief at 22. Landowner observes that Section 606(1)(D) "does not prohibit the outdoor storage of vehicles in any state, dismantled or otherwise[,]" but relates to "vehicles awaiting repair in an approved storage area." *Id*. However, the conduct alleged, and the Borough's evidence in support thereof, relate only to storing vehicles in an approved storage area; thus, even if proven true,

---

[10] Given our disposition here, we need not reach Landowner's third issue.

the complained of conduct cannot violate Section 606(1)(D). *Id*. at 23-24. To the extent the decisions below rationalized this violation by finding that Landowner's conduct obstructed sight lines along Center Avenue and Oak Street, Landowner believes that Section 606(1)(D) only bars *physical* obstructions. *Id*. at 24. Moreover, Landowner also asserts that the evidence of record fails to support any such violation. *Id*. at 24-25.

The Borough responds that Landowner's focus on the distinction between "dismantled vehicles" and "vehicles awaiting repair" ignores the subject of violation 35(D): obstruction of a public right-of-way. *Id*. On that point, the Borough proffers that Section 606(D) does not require any physical obstruction whatsoever, such that Landowner's obstruction of the sight lines along an intersection violates the Borough's Zoning Ordinance. Borough's Brief at 33. In the Borough's view, "[b]y placing vehicles on the Property such that people were hindered in turning onto a public right-of-way, [Landowner] violated [Section 606(1)(D) of the Borough's Zoning Ordinance]." *Id*. at 33-34.

Initially, in the event that a zoning ordinance leaves a term undefined, "it must be given its usual and ordinary meaning; if a court needs to define a term in a zoning ordinance, it may consult the definitions found in statutes, regulations, or dictionaries for guidance." *Nether Providence Township v. R.L. Fatscher Associates, Inc.*, 674 A.2d 748, 750-51 (Pa. Cmwlth. 1996). We are "guided to construe words and phrases in a sensible manner, utilize the rules of grammar and apply their common and approved usage, and give undefined terms their plain, ordinary meaning." *Adams Outdoor Advertising, LP v. Zoning Hearing Board of Smithfield Township*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006). To this end, we must apply the rules of statutory construction. *Delchester Developers, L.P. v. Zoning*

16

*Hearing Board of Township of London Grove*, 161 A.3d 1081, 1103 (Pa. Cmwlth. 2017).

Here, the Borough's Zoning Ordinance does not define the term "dismantled vehicles." In its Conclusions of Law, however, the ZHB reasoned that some "vehicles awaiting repair" can also be considered "dismantled vehicles" for purposes of the Ordinance. To be exact, the ZHB concluded: "Vehicles awaiting repair parts to replace those that have been or will be removed or disconnected are to be considered 'dismantled vehicles.'" ZHB's Decision at Conclusions of Law (C.L.) No. 34. This seems to comport with the ordinary meaning of the term. Mirriam-Webster's Dictionary defines "dismantle," in relevant part, as "to disconnect the pieces of." *Dismantle*, *Mirriam-Webster*, https://www.merriam-webster.com/dictionary/dismantled (last visited 6/20/25) Ironically, as an example, Mirriam-Webster's provides: "The mechanic **dismantled** the engine to repair it." *Id*. (emphasis in original). Thus, we agree with the trial court that the alleged conduct can violate both Sections 606(1)(C) and (D) of the Borough's Zoning Ordinance, because "dismantled vehicles" can also fairly include "vehicles awaiting repair" given the ordinary meaning of these terms.

Similarly, we are unpersuaded by Landowner's argument that Section 606(1)(D) only pertains to physical obstructions. The plain meaning of "obstruct" squarely contemplates sight lines. Black's Law Dictionary defines "obstruct" as: "1. To block or stop up (a road, passageway, etc.); to close up or close off, esp. by obstacle, . . . . 3. To cut off a line of vision; to shut out <the new construction obstructs our view of the road>." Black's Law Dictionary (12th ed. 2024). Moreover, to the extent Landowner argues that Section 606(1)(D) distinguishes between vehicles awaiting repair which obstruct *access* to a public right-of-way and

17

those which merely obstruct the corresponding sight lines, we believe this is a distinction without a difference. After all, without proper vision, any access to a roadway is rendered inaccessible to a driver seeking to safely avail themself of that public right-of-way. The evidence adduced before the ZHB bears this out.[11]

Concerning violation 35(D),[12] the zoning officer testified that prior to the grant of the Special Exception, drivers were cutting through the Property at the corner of Center Avenue and Oak Street. To cure this problem, Landowner represented that he would erect a barrier to prevent cross-through traffic on the Property. *See* ZHB's Hearing, 4/10/23, N.T., at 17-19. Instead of erecting a barrier with landscaping however, Landowner began parking cars there to block cross-through traffic. *Id*., N.T., at 19. Although this cured the issue of cross-through traffic, Landowner created a new problem: he began blocking the sightlines required to safely access the intersection at Center Avenue and Oak Street. *Id*.

Likewise, one neighbor testified that due to the number of cars being parked along Center Avenue, she is "concerned that someday it's going to be a bad accident there and it may take a life . . . ." ZHB's Hearing, 5/8/23, N.T., 67-68. Other neighbors echoed this concern. For example, another neighbor testified that Landowner "blocks vision to Center Avenue and Oak Street." *Id*., N.T., at 71. One neighbor's son related that:

---

[11] For ease of discussion, we address Landowner's evidentiary challenge to violation 35(D) here, rather than with Landowner's other substantial evidence challenges. However, our standard of review as discussed in footnote 4 of this memorandum opinion as well as below necessarily apply.

[12] To be clear, this testimony was originally introduced in support of violations 22 and 23. ZHB's Hearing, 4/10/23, N.T., at 17-19. However, upon discussing violation 35(D), the Borough's counsel and the zoning officer related that this testimony also supported violation 35(D) such that it would have been redundant to elicit further testimony on this point. *See id*., N.T., at 22-23.

18

My main concern, and I've experienced this over and over again, is what has been testified to tonight . . . . is the blocking of the view of this intersection.

I visit my parents very often, two to three times a week. Even though I'm not a Borough resident anymore, I grew up here. I know these streets well. There have been several occasions where not only myself, but my wife with our son in the car, have not been able to see when pulling off of Oak Street onto Center Avenue either turning right or left.

*Id.*, N.T., at 76-77. For his part, Landowner generally denied that any vehicles on his property were not parked in an approved storage area or that the vehicles were obstructing a public right-of-way. ZHB's Hearing, 6/12/23, N.T., at 42. However, regarding a different violation, Landowner testified that to prevent people from cutting through his parking lot along Center Avenue and Oak Street, that Landowner parks cars near that corner. These cars are sometimes "customer cars." *Id.*, N.T., at 33.

Section 606(1)(D), by its plain terms, prohibits vehicles awaiting repair from obstructing a public right-of-way, whether being stored in an approved storage area or not. Given Landowner's line of work and his admission that he parks customer cars along the corner of Center Avenue and Oak Street, as well as the copious testimony adduced by the zoning officer and Landowner's neighbors, one can readily conclude that Landowner has parked vehicles awaiting repair in a manner that obstructs the public rights-of-way along the Property. Thus, on this point, we discern no error in the decisions below.

### C. Substantial Evidence

As indicated, a zoning hearing board "abuses its discretion where its findings are not supported by substantial evidence, which is such relevant evidence

19

that a reasonable mind would accept as adequate to support the conclusions reached." *RDM Group v. Pittston Township Zoning Hearing Board*, 311 A.2d 1216, 1224 (Pa. Cmwlth. 2024). Because of the zoning hearing board's expertise concerning local conditions, we must not substitute our interpretation of the evidence before the zoning hearing board for our own interpretation. *Id*. (citing *Tidd v. Lower Saucon Township Zoning Hearing Board*, 118 A.2d 1, 13 (Pa. Cmwlth. 2015)).

*i. Violation 35(A)*

Section 606(1)(A) provides: "All minor repair work, vehicle washing, waxing, detailing, lubrication and installation of parts and accessories shall be performed within an enclosed building." R.R. at 127a. Landowner argues that this provision of the Borough's Zoning Ordinance "sets forth specific automotive services that are prohibited from being performed outside of an enclosed building." Landowner's Brief at 28. To that end, Landowner avers, the Borough's allegation – that "work was being done outside" – and the attendant vague testimony elicited at the hearings "fails to meet the specificity called for" under the Zoning Ordinance. *Id*. In pertinent part, the Borough responds that Landowner's argument ignores his own testimony, as well as the testimonies of the zoning officer and multiple neighbors. Borough's Brief at 36.

At the hearings, Landowner admitted:

Q. [Landowner], do you regularly perform work outside the building?

A. No. I'm not going to sit here and lie. It's something that we have done in the past. I prefer not to. Obviously, I bought a building for a reason. But there are situations that arise where I feel it is necessary.

ZHB's Hearing, 6/12/23, Notes of Testimony (N.T.), at 13-14. When recalling one such necessary instance, Landowner typically referred to "emergency situations"

20

where there was no space within his shop, but a driver required immediate assistance. *Id*., N.T., at 14-15.

Additionally, the zoning officer testified that he has witnessed repair work being done outside like "looking under the hood, primarily engine stuff." ZHB's Hearing, 4/10/23, N.T., at 20, 48-49. Two neighbors also testified that repair work was being done outside, sometimes late at night. ZHB's Hearing, 5/8/23, N.T., at 67, 71. Thus, the ZHB concluded: "Work being done outside the structure was consistent with diagnostic and other operations required of an auto repair shop or on a rare emergency situation." ZHB's Decision at F.F. No. 12.

Contrary to Landowner's argument, Section 606(1)(A) of the Borough's Zoning Ordinance squarely contemplates any and all "minor repair work," such that ZHB did not err by sustaining this violation without greater specificity. Rather, between Landowner's admission and the accompanying testimony of the zoning officer and neighbors, sufficient evidence exists such that a reasonable mind could conclude that Landowner was conducting minor repair work within the meaning of Section 606(1)(A) outside of an enclosed building. Hence, neither the ZHB nor the trial court erred in denying Landowner's appeal as to violation 35(A).

### ii. Violation 35(C)

Finally, Section 606(1)(C) of the Borough's Zoning Ordinance provides: "All vehicle parts, dismantled vehicles and similar materials shall be stored within an enclosed building or totally screened from view from adjacent properties and any public or private roadway by a solid or privacy fence." R.R. at 127a. Landowner once again argues that the trial court erred in denying his appeal of

21

violation 35(C), because section 606(1)(C) of the Zoning Ordinance only relates to the storage of "dismantled vehicles." Landowner's Brief at 32-35. In Landowner's view, the Borough's proffered evidence only demonstrates that "vehicles awaiting repair" are being stored on the Property, not dismantled vehicles, and that the ZHB erred by considering "vehicles awaiting repair" to be included within the meaning of Section 606(1)(C). *Id*. As above, the Borough responds that Landowner's arguments ignore relevant testimonial evidence, principally his own. *Id*. at 41-45.

> Here, Landowner testified:
>
> Q. Have there ever been dismantled vehicles stored outside of your shop?
>
> A. Yes. Sometimes there have been in the past.
>
> Q. What's the reason for why there would ever be a dismantled vehicle stored outside?
>
> A. We did have a contract with someone for a little bit. They were buying scrap cars. They would bring them to us. We would pull the drivetrains out immediately. Or within a couple of days. Put them back outside. And then they would pick them up. That was supposed to be immediately. But there were times where they would sit there for two, three, four days.

ZHB's Hearing, 6/12/23, at 34-35. The zoning officer also testified that he had observed vehicles without engines being stored on the property. ZHB's Hearing, 4/10/23, N.T., at 27-28. Further, one neighbor testified: "We've lived there 47 years. We never thought we'd be living behind an embarrassing junkyard." ZHB's Decision, 5/8/23, N.T., at 71. Other neighbors shared her sentiment: "[W]e didn't want [the Property] to become, like a junkyard . . . Well, there's cars that have been sitting there, and I'm going to guess wildly, at least two years, haven't really moved . . . ." *Id*., N.T., at 78.

Given our earlier discussion on Section 606(1)(D), we need not address Landowner's attempt to obfuscate the distinction between "vehicles awaiting repairs" and "dismantled vehicles." In any case, as a matter of substantial evidence, Landowner's admission as well as the testimonies of the zoning officer and Landowner's neighbors directly support the conclusion that Landowner has been improperly storing dismantled vehicles in violation of the Borough's Zoning Ordinance.

## IV. Conclusion

Accordingly, based on the foregoing, the trial court's order is affirmed in part and reversed in part.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Stipkovic,                                  :
                                                   :
                        Appellant                  :
                                                   :
            v.                                     : No. 779 C.D. 2024
                                                   :
Zoning Hearing Board of New                        :
Stanton and Borough of New Stanton :

# **O R D E R**

AND NOW, this 23rd day of June, 2025, the order of the Westmoreland County Court of Common Pleas (trial court) dated May 17, 2024, is AFFIRMED in part and REVERSED in part. The trial court's order is reversed only as to violation 22 of the Zoning Hearing Board of the Borough of New Stanton's August 23, 2023 decision.

_____
MICHAEL H. WOJCIK, Judge